[Civ. No. 14605. Third Dist. May 14, 1975.]

GORDON H. WINTON, JR., Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SACRAMENTO JUDICIAL
DISTRICT OF SACRAMENTO COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Roger E. Venturi and Janice Hayes, Deputy Attorneys General, for Real Party in Interest and Appellant.

Coombs, Manley, Root & Rose and Michael Manley for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## OPINION

**PARAS, J.**—On January 28, 1970, the plaintiff Gordon H. Winton, Jr., a member of the California State Bar for at least 15 years and an

assemblyman and chairman of the Assembly Criminal Procedures Committee, appeared at the morning session of the defendant Sacramento Municipal Court before Judge Thomas Wallner. The purpose of the appearance was to plead to a misdemeanor drunk driving charge (Veh. Code, § 23102, subd. (a)), which had been filed against him. Together with a number of other persons charged with Vehicle Code violations, he received collective advice from Judge Wallner, pertinent portions of which we quote as follows:[1]

"Ladies and gentlemen, if I may have your attention, I'll advise you now of your rights in this court today and in the future.

"When the Deputy District Attorney calls your name, you will please come forward. If, for any reason, you want a continuance, please ask for it immediately. You may want a continuance to hire a lawyer, to get some money together to pay a fine, to get the results of some chemical test that you may have submitted to, or any number of other reasons. No reasonable request for a continuance will be refused.

"If you are willing to go forward today, the Deputy District Attorney will tell you of the charges pending against you. These charges are contained in a complaint which has been prepared and filed by the District Attorney's office.

"If you admit the truth of the charges, you will enter a plea of guilty, and, if you enter a plea of guilty, in most cases, judgment and sentence will be imposed this day. If you deny the truth of the charges, you will enter a plea of not guilty. If you enter a plea of not guilty, you will be asked 'Do you want a Court trial or a jury trial?'

"A Court trial is before a judge sitting alone. A jury trial is before a judge sitting with a jury of twelve people. The jury is chosen from a jury panel, usually composed of thirty-five to forty jurors, which panel, in turn, is chosen from the community by the Jury Commissioner.

"You are entitled to be represented by a lawyer at all stages of the proceedings. And, if you do not have the money to hire a lawyer of your choice, ask me, and I will appoint a lawyer to represent you at no expense to you.

---

[1]We augmented the record on appeal to include the transcript of proceedings of January 28, 1970. After initially objecting to our augmenting order, plaintiff at oral argument withdrew his objection and stipulated that we take judicial notice of such proceedings.

"At your trial, the People have the burden of proving you guilty beyond a reasonable doubt and to a moral certainty. You have nothing to prove, as you are presumed to be innocent.

"You have the right to use the processes of this court to subpoena any witnesses that may exist to testify on your behalf.

"At your trial, you have a right to confront the witnesses called by the District Attorney's office, to cross-examine these witnesses. You have a right to remain silent. You have no duty to incriminate yourself. That is, you do not have to take the witness stand and be a witness against yourself.

". . . . . . . . . . . . . . . . . . .

"If you are found guilty or plead guilty, judgment and sentence will be imposed. It will consist of imprisonment in the County Jail, the payment of a fine, the suspension of your driving privilege, or, in those cases where I feel no punishment is justified or necessary, no punishment will be imposed. I will say, 'The proceedings are suspended.' That means that, while you may have made a mistake, I don't feel that it's necessary to change your attitude by punishing you, that, perhaps, it was just an error in judgment that you have made, and it's not likely to happen again.

". . . . . . . . . . . . . . . . . . .

"I would admonish you people who are here as defendants today that you are here charged with the commission of crimes. Most of you do not feel that you are criminals. Most of you are in favor of law and order. This is the hue and cry in our society today. I am perfectly aware that we are all subject to the errors and caprices of the human heart, and I'll be lenient with the first offender. But the person who shows me by his record that he cannot, he does not, he will not obey the traffic laws—particularly, if what he has done is a willful violation of the law—he can expect to find himself in the County Jail."

Thereafter, plaintiff's case was called, and we quote from the reporter's transcript:

"MR. FRANCHI [The Deputy District Attorney]: Gordon Winton, Jr.

"DEFENDANT: Plead not guilty, your Honor, waive time, ask for a Court trial.

"MR. FRANCHI: Your Honor, we move to ask for a jury trial on this matter.

"THE COURT: Did you have special instructions? I don't know about that District Attorney's office. They're really gung-ho. You're [They're][2] entitled to a jury, Mr. Winton.

"DEFENDANT: I realize that. I'm an attorney.

"THE COURT: I know that, sir. It will go on the jury setting calendar. What would be your convenience?

". . . . . . . . . . . . . . . . . . . . .

"DEFENDANT: February 5th is the next setting calendar?

"MR. FRANCHI: That's at nine o'clock in the morning.

"DEFENDANT: Nine o'clock on February 5th, if I may.

"MR. FRANCHI: And you do waive time?

"DEFENDANT: I waive time, yes.

"THE COURT: February 5th. Time is waived."

Sometime thereafter a recess was taken, and plaintiff spoke with Judge Wallner in chambers. The court was then again called into session and the following occurred:

". . . . . . . . . . . . . . . . . . . . .

"MR. FRANCHI: Your Honor, you want to recall the matter of—

"THE COURT: Yes, at the bottom of page six.

"MR. FRANCHI: Gordon Winton, Jr.

"THE COURT: Yes.

---

[2]The context suggests an inadvertent error, either orally in the word used or typographically in the transcript. It was more appropriate to say "*They're* entitled to a jury, Mr. Winton."

"DEFENDANT: Your Honor, at this time I would like to withdraw my not guilty plea and change it to a guilty plea.

"THE COURT: You're sentenced to pay a fine of two fifty plus the tax or twenty-five days in the County Jail. I'll make an order you be allowed to have your driver's license. And you want a stay of execution?

"DEFENDANT: Five days, your Honor?

"THE COURT: . . . That's next Tuesday.

"DEFENDANT: Thank you, your Honor. Yes."

Nothing more was done by plaintiff with reference to this conviction until well over two years later. On September 18, 1973, plaintiff was arrested and charged with misdemeanor drunk driving, again in the defendant municipal court. The complaint charged the 1970 offense as a prior conviction, thus invoking among other penalties the then mandatory minimum five-day jail sentence of subdivision (d) of section 23102 of the Vehicle Code (although a minimum, the sentencing courts appear to treat the five days as a maximum) and the one year operator's license suspension of subdivision (c) of section 13352 of the Vehicle Code. On October 26, 1973, through counsel, plaintiff filed a motion in municipal court to strike the 1970 conviction as invalid, because allegedly (1) plaintiff did not waive his right to counsel, and (2) Judge Wallner coerced the plea of guilty, thus making it involuntary.

The motion was argued before Judge Sheldon H. Grossfeld on Friday, November 9, 1973, and an evidentiary hearing was conducted on the following Monday, November 12, 1973. (*In re Woods* (1966) 64 Cal.2d 3, 9-11 [48 Cal.Rptr. 689, 409 P.2d 913].) Plaintiff testified in support of his motion. Judge Grossfeld denied the motion, stating in part: "[y]ou have a situation where he [plaintiff] comes in, he has a conference with the Judge. He knows what's going to happen. And . . . the Court is now asked to set aside a plea based upon the fact, I assume, coercion by Judge Wallner which the Court finds extremely difficult to believe. . . . [¶] Mr. Winton's own testimony is notoriety, the publicity of the jury trial was certainly a factor. . . . so we are really called upon to set aside his plea on the basis of non-waiver of counsel by an attorney who is fully aware of this right, who entered—wanted to enter the plea, decided a jury trial, for whatever the reasons, . . . wasn't the road to go. That he will get it disposed of with the minimum fine and a [retention] of his license.

[¶] There is no question that at the time that Mr. Winton entered the plea, he knowingly and voluntarily entered that plea of guilty. And the Court so finds. The motion will be denied. [¶] Specifically, the Court finds [that at] the time of the entry of plea, the plea was knowingly and voluntarily entered into."

The 1973 complaint proceeded to jury trial on November 13, 1973, and on November 16, the jury rendered a verdict of guilty. Prior to sentence and on December 10, 1973, a petition for writ of mandate was filed by plaintiff in superior court to compel the defendant municipal court to set aside and strike the 1970 conviction for the same alleged constitutional invalidity. A nonevidentiary hearing was held in the superior court before Judge Irving H. Perluss on December 26, 1973, and again on February 22, 1974. On March 5, 1974, the superior court made an order granting the petition and commanding the defendant municipal court to set aside the 1970 conviction. The real party in interest (the People) has appealed from the judgment entered pursuant to that ruling.

## SCOPE OF REVIEW

When the 1973 complaint charging a misdemeanor was filed in the municipal court, (which court, and not the superior court, had jurisdiction thereof—Pen. Code, § 1462), it became solely that court's business to process the case in all respects. It was for that court to rule on all motions, including the motion to strike the prior conviction; the superior court had no jurisdiction over the defendant, the offense, the proceeding, or any motions connected therewith. (Cal. Const. art. VI, § 5; Pen. Code, § 1462; *In re McKinney* (1968) 70 Cal.2d 8 [73 Cal.Rptr. 580, 447 P.2d 972]; *People* v. *Smith* (1964) 231 Cal.App.2d 140 [41 Cal.Rptr. 661].) ■ Judgments and orders of a municipal court, just as those of a superior court, are presumed correct; and a reviewing court will not disturb factual determinations expressly or impliedly made as an incident to a judgment or order, if they are supported by any substantial evidence. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, p. 4225 and § 245 et seq., p. 4236; 5A C.J.S., p. 230 et seq.) Where there are no express findings of fact, it is implied that the trial court (municipal or superior) made whatever findings were necessary to support the judgment or order. (*Id.; Fursdon* v. *County of Los Angeles* (1950) 100 Cal.App.2d Supp. 845 [223 P.2d 520]; 5 Cal.Jur.3d, Appellate Review, §§ 796, 798.)

■ Normally judgments and orders of the municipal court are reviewed by appeal to the appellate division of the superior court. (Code

Civ. Proc., §§ 77, 904.2.) The extraordinary remedy of mandamus will, however, lie where the remedy of appeal is inadequate (Code Civ. Proc., § 1085; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 104, p. 3879), not to control the discretion of the lower court (Witkin, *op. cit., supra,* p. 3856), but to determine if discretion has been abused (*Id.* at p. 3857). In such a case therefore, the writ procedure takes the place of the appeal and is governed by the same principles as to scope of review. (Cf. Code Civ. Proc., § 400; Witkin, *op. cit., supra,* p. 3859.) The higher court reviews the action of the inferior court, on the record made in the inferior court (Cf. *Applegate Drayage Co.* v. *Municipal Court* (1972) 23 Cal.App.3d 628 [100 Cal.Rptr. 400]; *People* v. *Stroud* (1969) 273 Cal.App.2d 670, 674, 675 [78 Cal.Rptr. 270]; *Sequoia Pine Mills, Inc.* v. *Superior Court* (1968) 258 Cal.App.2d 65 [65 Cal.Rptr. 353]; Witkin, *op. cit., supra,* p. 3960 et seq.), and determines if discretion has been abused (Witkin, *op. cit., supra,* p. 3857).

Thus when Judge Grossfeld conducted an evidentiary hearing and at its conclusion denied the motion to strike, he impliedly found that in 1970 (1) Judge Wallner did not coerce the guilty plea, and (2) plaintiff knowingly, intelligently, and voluntarily waived his right to counsel. Because the remedy by appeal was inadequate (mandatory jail and license suspension), mandamus was a proper remedy to review this ruling. The function of the superior court in the mandamus proceeding was to determine whether there was sufficient evidence to support the municipal court's determination (thus deciding if discretion was abused), not to determine the question de novo and without reference to Judge Grossfeld's ruling.

■ Our role as a Court of Appeal reviewing the action of the superior court in such a case is akin to the Supreme Court's role in reviewing decisions of Courts of Appeal. Where, as here, the superior court through mandamus conducts in effect an appellate review of municipal court proceedings, and does not itself take evidence or make independent factual determinations, it rules on a pure question of law, which it is in no better position to do than a Court of Appeal. Hence the scope of our review of the municipal court's decision is coextensive with that of the superior court. (See *Applegate Drayage Co.* v. *Municipal Court, supra,* pp. 635, 636.)

It appears that the superior court properly understood and approached its function at the mandamus hearing. Judge Perluss' comments at oral argument make this clear. He did not seek to take additional evidence

(none was tendered) nor did he assert that he would interfere with the discretion of the municipal court or with its resolution of facts. The reason for his order to set aside the 1970 conviction is given in a written opinion of March 5, 1974, as follows: ". . . the precise question . . . is whether . . . there was an implied waiver by petitioner of the right to counsel. [¶] The court has examined the transcript herein and has concluded that there was no such waiver. Apparently, the lower court found to the contrary because Mr. Winton himself is an attorney and thus, the court believed that he was, ipso facto, aware of his rights. . . . [Citation of a portion of the above-quoted excerpt from Judge Grossfeld's ruling.] [¶] The rationale of the lower court is not the law. . . ."

## WAIVER OF COUNSEL[3]

The leading case is *Mills* v. *Municipal Court,* 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273], decided in 1973. There it was held that the *Boykin-Tahl* rule (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]), requiring that prior to acceptance of a felony guilty plea the record must show on its face an awareness and express waiver of a defendant's constitutional rights (including the right to counsel—*In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179]), applies to misdemeanor cases also. *Mills* also held that the *Boykin-Tahl* doctrine will apply to misdemeanors prospectively only. (*Mills* v. *Municipal Court, supra,* p. 308.) In that regard the court stated in part:

"Finally, we have determined that our decision in this matter, applying the *Boykin-Tahl* requirements to misdemeanor proceedings, should be applied purely prospectively, that is, only to guilty pleas entered after the date of this decision.

"Our conclusion in this regard follows from our analysis of the three-fold criteria that both the United States Supreme Court and this

---

[3]We overlook the fact that the petition for writ of mandate does not state a cause of action. After alleging that plaintiff is a defendant in the 1973 municipal court proceeding, that he stands in danger of mandatory jail time and loss of driving privileges because of a prior conviction, and that a court has a duty to set aside a prior conviction unconstitutionally rendered, the petition prays for a peremptory writ. Nowhere does it allege affirmatively that plaintiff's guilty plea of 1970 was involuntary or the result of coercion, or that the right to counsel was not waived.

The district attorney did not raise this point in the trial court, nor has it been argued on appeal. Since the prior conviction is undisputed and it is clearly an oversight which could be cured by amendment, we deem it more appropriate to decide the ultimate issue rather than prolong litigation on the subject. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 32, p. 4046.)

court have utilized for determining whether a constitutional ruling is to be applied retroactively or prospectively: '(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice.' . . . the role played by the *Boykin-Tahl* doctrine in assuring intelligent and voluntary guilty pleas is a 'primarily prophylactic' one (4 Cal.3d at p. 248), for even prior to *Boykin* and *Tahl* a defendant could have his guilty plea set aside if he could actually prove that the plea was not knowingly or voluntarily entered. Thus, in denying retroactive effect to *Boykin,* the *Tahl* court did not thereby insulate unknowing or involuntary pleas from all collateral attack; instead, it simply refused to apply the decision's 'prophylactic' requirement of an explicit 'on the record' showing of voluntariness to past guilty pleas.

". . . we believe that a retroactive application of the present decision would have a seriously detrimental effect on the administration of justice which far outweighs the possible benefits to be gained from such application. Since the *Boykin* decision in June 1969, many thousands of guilty pleas have been entered in misdemeanor proceedings. If we were to apply the present decision retroactively, we would undoubtedly invalidate many of these convictions, *convictions which, although lacking explicit 'on the record' waivers, for the most part resulted from voluntary and intelligent guilty pleas.* As we noted in *Tahl:* '[W]hile we endorse the Supreme Court's determination [in *Boykin*] that more explicit proceedings are both necessary and desirable to assure the utmost constitutional protection to an accused, we also must recognize that a "large number of constitutionally valid convictions . . . may have been obtained"—*and indeed were obtained*—under the previous practice. *To invalidate all such prior guilty pleas years . . . after their acceptance would have a dolorous effect upon* the administration of justice.' " (Italics added.) (*Mills* v. *Municipal Court, supra,* pp. 308, 310.)

■ Initially we note, as doubtless did Judge Grossfeld, the passage of close to three years from the 1970 plea of guilty to the motion in the municipal court to set it aside. Both good sense and the law recognize that a long lapse of time strengthens the presumption favoring the validity of a judgment. (*Estate of Wiechers* (1926) 199 Cal. 523, 527 [250 P. 397].) We cannot help but remark that had the plaintiff truly felt that he entered the 1970 guilty plea involuntarily he probably would have sought to correct it within a reasonable time after its entry. That he did not do so indicates that his real concern was and is with the mandatory penalties associated with the 1973 conviction, not with any possible impropriety in the 1970 conviction.

We note also the evidence which was presented to Judge Grossfeld and on which he based his factual determination of voluntary waiver of right to counsel. Initially there is the transcript of the 1970 proceeding itself which clearly shows that all present were expressly advised of their right to counsel, at no cost if they could not financially afford counsel. ■ While the plaintiff equivocally claimed at the 1973 municipal court hearing that although aware that the admonition was being delivered, he "was upset" and did not know "how carefully" he was listening to Judge Wallner's collective advice and may not have "heard everything" (this is not sufficient to overcome the presumption that what was spoken with the intent of being heard by those in the speaker's presence was in fact so heard and understood—see *In re Johnson* (1965) 62 Cal.2d 325, 332 [42 Cal.Rptr. 228, 398 P.2d 420]; *James v. Municipal Court* (1975) 45 Cal.App.3d 557, 561 [119 Cal.Rptr. 606]), he unequivocally admitted, both on cross-examination by the district attorney and on questioning by Judge Grossfeld that he knew he had the right to be represented by an attorney. A portion of the court's questioning was as follows:

"Q. And you knew you had the right to be represented by an attorney?

"A. Yes.

". . . . . . . . . . . . . . . . . . . .

"Q. So that basically when you were there, you knew basically the rights that the defendant has, both as an attorney and by the fact that you were seated in the courtroom when Judge Wallner gave all the rights?

"A. I think that is a fair statement."

Questions by plaintiff's own counsel on the subject were in part to this effect:

"Q. Did you waive your rights—did you give up your right to have an attorney prior to pleading?

"A. I didn't *consciously* waive any rights. I *didn't actually say* I waived any right." (Italics added.)

■ Thus there was more than sufficient evidence upon which Judge Grossfeld could base his finding of intelligent waiver. He certainly was

not bound to believe either that plaintiff did not hear the admonition or that he didn't waive his right to counsel; on the contrary, he had every sound basis for concluding, as he did, that counsel was intelligently waived.

In fact, from a careful reading of the record before Judge Grossfeld, consisting of the transcript of both the 1970 proceedings and the testimony of plaintiff, we cannot conceive of any other reasonable conclusion than that of Judge Grossfeld. ▇ Although there is a reasonable presumption against waiver of a fundamental constitutional right (*People* v. *Phillips* (1964) 229 Cal.App.2d 496, 503 [40 Cal.Rptr. 403]), convincing evidence of such waiver must be respected. ▇ Plaintiff knew of his right to counsel, and also of all his other rights as a defendant in a criminal action, each of which goes primarily to the issue of guilt or innocence (he also knew of a .15 percent blood count). In the face of such knowledge he pleaded guilty. This necessarily and obviously means that he waived all of those rights, including the right to counsel. It is fantasy and folly to conclude under these particular circumstances that the failure to mouth the words "I waive" indicates an absence of waiver. (*McChesney* v. *Henderson* (5th Cir. 1973) 482 F.2d 1101.)

The following language of *Hartman* v. *Municipal Court* (1973) 35 Cal.App.3d 891, 893 [111 Cal.Rptr. 126], is highly applicable: "The record clearly shows that collective advice regarding their constitutional rights was given to the assembled defendants prior to the entry of their pleas. Appellant was fully advised of his constitutional rights, and he was informed that by entering a plea of guilty he waived them. *By the actual entry of his plea, he expressly waived them.* 'The prohibitions against involuntary or unintelligent pleas should not be relaxed, but *neither should an exercise in arid logic render those constitutional guarantees counter-productive and put in jeopardy the very human values they were meant to preserve.*' (*North Carolina* v. *Alford* (1970) 400 U.S. 25, 39 [27 L.Ed.2d 162, 172, 91 S.Ct. 160].)" (Italics added.)

It is clear from Judge Perluss' ruling, as partially quoted hereinabove, that he attributed to Judge Grossfeld's denial of the motion to strike a basis which it did not have. Repeating in part, the Perluss ruling states: "Apparently, the lower court found to the contrary [that the right to counsel was impliedly waived] because Mr. Winton himself is an attorney and thus, the court believed that he was, *ipso facto,* aware of his rights. . . ." (Italics added.) There is no support in the record for this conclusion. Judge Grossfeld nowhere said that his ruling was based upon

any "ipso facto" awareness of the right to counsel (i.e., imputed awareness, because petitioner was an attorney). To the contrary he expressly said in his ruling that the plaintiff "was fully aware of this right" to counsel, and his language shows that he considered all available facts and information in order to reach this conclusion. Included in such information were two direct statements by plaintiff during his sworn testimony that he was in fact aware of his right to counsel. ■ The burden is on plaintiff to make adequate allegations of nonwaiver, and his failure to claim actual ignorance of his right to counsel is a significant factor. (*In re Render* (1969) 271 Cal.App.2d 423, 426 [76 Cal.Rptr. 522].) A reading of the entire record of the proceedings before Judge Grossfeld demonstrates repeatedly that his ruling of a knowing and voluntary plea was based upon *actual* knowledge by plaintiff of his right to counsel, both because he was so informed by Judge Wallner and also because he knew it anyway; not upon imputed knowledge. One's status as an attorney is one of many facts bearing upon a person's background, experience, and conduct which should be properly considered to determine intelligent waiver. (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]; *In re Johnson, supra,* p. 355; *In re Render, supra,* p. 427.) The superior court erred in attributing to the municipal court both a misapprehension of the law and a misapplication of the demonstrated facts to the law.

From the foregoing, we are inexorably drawn to the conclusion that the superior court applied the *Mills* holding retroactively, despite the unmistakable direction of the Supreme Court to apply it prospectively only. The municipal court record is so replete with clear evidence of knowing and intelligent implied waiver of the right to counsel, and so unerringly shows that Judge Grossfeld did not base his conclusion of such waiver upon any "imputed" knowledge of the right to counsel that the only possible remaining basis for the superior court's ruling is that plaintiff did not in.1970 state for the record in so many words that he "waived" the right to counsel. This "primarily prophylactic" step was not taken by the municipal court, because it was not then procedurally required. This case is a graphic illustration of the reason why the Supreme Court wisely made the *Mills* ruling prospective only. Despite the absence of an explicit "on the record" waiver of the right to counsel, this 1970 plea was knowingly and voluntarily made; to invalidate it "would have a dolorous effect upon the administration of justice."

### COERCION OF THE GUILTY PLEA

■ Plaintiff's alternative ground for seeking vacation of the 1970 conviction was the alleged coercion of the guilty plea by Judge Wallner.

Although it was rejected by both the municipal and superior courts, plaintiff still urges it on appeal, on the theory that even if the trial court's ruling was based upon improper grounds, if it can be supported by a proper ground shown in the record, it should be affirmed. (See 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4293, 4294.)

The evidence to support this claim was in the form of plaintiff's testimony before Judge Grossfeld. He stated that during the recess he spoke with Judge Wallner (whom he did not previously know) in chambers. Judge Wallner was upset with the district attorney for insisting upon a jury trial. He suggested to plaintiff that he plead guilty, in which event there would be imposed the minimum permissible fine, with driver's license retention. Judge Wallner said that with a .15 percent blood alcohol count, in view of the presumption of intoxication at .10 percent, there was "practically no chance of winning a jury trial." Plaintiff agreed and changed his plea. The motivation to plead guilty was a combination of fear of a jury trial, notoriety of such trial, leniency of Judge Wallner's proposed penalty, and the likelihood of conviction, as opined by the judge. Judge Wallner was not upset with plaintiff and did not tell him that he had to plead guilty.

On this evidence Judge Grossfeld found that the plea of guilty was not coerced but was freely and voluntarily entered. In addition to refusing to base his decision on that ground, Judge Perluss at oral argument voiced his agreement with this portion of the Grossfeld ruling.

We have fully reviewed the transcripts regarding this aspect of the case. We agree with Judge Perluss that there was ample evidence from which Judge Grossfeld could find that the plea of guilty was not the result of coercion by Judge Wallner but the result of plaintiff's intelligent choice. (See *Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463].)

The judgment is reversed, with directions to the superior court to vacate its peremptory writ of mandate and the order for its issuance and to discharge the alternative writ.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied June 6, 1975.