353 So.2d 265 (1977)
STATE of Louisiana
v.
Raymond TAPP.
No. 60158.
Supreme Court of Louisiana.
December 19, 1977.
*266 Ronald J. Rakosky, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Vincent Paciera, Jr., Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Raymond Tapp was charged in a two-count indictment with possession of heroin and possession of heroin with intent to distribute, violations of R.S. 40:966(B)(1) and (B)(2). After a bench trial, he was convicted as to both counts and sentenced to ten years on the possession conviction and to a life sentence, suspended, on the second count. Defendant now appeals his convictions on the basis of two assignments of error.

ASSIGNMENT OF ERROR NO. 1
Defendant argues that the trial judge wrongly denied his supplemental motion to suppress because evidence of the crime was illegally seized from his person through the use of excessive force in violation of his rights under the fourth and fifth amendments.[1]
The facts of the case are not in substantial dispute. Members of the New Orleans police department were executing a search warrant at a house on Lowerline Street in New Orleans, Louisiana. Two persons were found in the house but no heroin was found except a residue on a syringe found in the *267 refrigerator.[2] While the officers were still in the house, defendant Tapp, who was apparently not known on sight by the officers, entered the front door of the house. When he saw the policemen, he quickly put a small tinfoil object covered with cellophane into his mouth. Because the officers believed he was trying to swallow a packet of heroin, the three officers set upon him and attempted to force the packet out of his mouth. Tapp resisted their efforts and the ensuing fight rolled onto the front porch, down the steps, and into the yard where two other officers joined the fight. One officer held his hands around defendant's throat in an effort to prevent him from swallowing the evidence.[3] According to the officers, they pummelled defendant in the face and head with their fists, and called on defendant to "Spit it out!" According to defendant's uncontradicted testimony one officer eventually held defendant's nose in an effort to cut off his breathing. The officers estimated that the fight, which one of them described as "one hell of a fight," lasted fifteen to twenty minutes. Eventually the five officers successfully caused defendant to spit up the packet, which was then apparently lodged near or at the top of his esophagus, and they arrested him for heroin possession. Defendant Tapp and two of the officers were taken to the hospital for treatment of their injuries. The other officers then interviewed two young children (ages 8 and 5) who had arrived at the house with Tapp. The officers questioned Tapp's children as to where they had been immediately before coming to the house, and they directed the officers to another nearby house. On the basis of the children's information and the forcible recovery of the five dosage units of heroin from Tapp's person, the officers gained a search warrant to this second residence. In their search of that house, the officers discovered and seized a large quantity of heroin, and it was this substance which formed the basis of defendant's arrest and conviction of possession of heroin with intent to distribute.
We assume for our present purposes that the officers reasonably believed that defendant was attempting to swallow contraband, and that they had a reasonable basis on which to arrest him for its possession. That finding does not end the matter, however, for we must still decide whether the force with which the officers garnered the questioned evidence constituted an unreasonable search and seizure under the fourth amendment, and whether the manner of seizure fell short of civilized standards of decency and fair play in derogation of the due process clause of the fifth and fourteenth amendments.
The seminal case articulating the standards for police use of force to extract physical evidence from the body of a nonconsenting suspect is Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In Rochin, police officers, following an anonymous tip, burst into defendant's apartment. Defendant picked up two capsules from a night stand and swallowed them. The Court described the events in this way: "A struggle ensued, in the course of which the three officers `jumped upon him' and attempted to extract the capsules." 342 U.S. at 166, 72 S.Ct. at 206. When this effort failed, the officers took Rochin to a hospital where, against his will, his stomach was pumped. The two capsules were vomited up and defendant was convicted of their possession. The high court held, on due process grounds, that the evidence seized should have been excluded at trial:
"[W]e are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too *268 energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contentsthis course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." 342 U.S. at 172, 72 S.Ct. at 209.
The court compared the forcible extraction of physical evidence to the forcible extraction of a confession and excluded the evidence seized for the same reason that it would exclude involuntary confessions:
"Use of involuntary verbal confessions in State criminal trials is constitutionally obnoxious not only because of their unreliability. They are inadmissible under the Due Process Clause even though statements contained in them may be independently established as true. Coerced confessions offend the community's sense of fair play and decency. So here, to sanction the brutal conduct which naturally enough was condemned by the court whose judgment is before us, would be to afford brutality the cloak of law. Nothing would be more calculated to discredit law and thereby to brutalize the temper of a society." 342 U.S. at 173-74, 72 S.Ct. at 210.
The decision in Rochin, which as indicated earlier was based entirely on due process grounds, can be compared to the same court's contrary result under the fourth amendment in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In that case, police arrested defendant at a hospital where he had been taken for treatment after an automobile accident. At police request, medical personnel took a blood sample from the defendant, without his consent and without a warrant. In approving this procedure, the court noted specifically that the officers proceeded in an accepted medical procedure and that the operation was performed in a reasonable manner without trauma or pain. Moreover, the court found an "emergency situation" in the highly evanescent nature of the evidence: "We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system.. . . [T]here was no time to seek out a magistrate and secure a warrant." 384 U.S. at 770-71, 86 S.Ct. at 1836. The court emphasized that:
"we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." 384 U.S. at 772, 86 S.Ct. at 1836
We find that the forcible seizure of the evidence here is far closer to the facts in Rochin than those in Schmerber. The beating and choking of defendant Tapp is reminiscent of, if not more excessive than, the beating officers gave to defendant Rochin. The prolonged and brutal struggle to cause Tapp to disgorge the packet was excessive under the circumstances and thereby abused common conceptions of decency and civilized conduct. See Huguez v. United States, 406 F.2d 366 (9th Cir. 1968). Although policemen can use reasonable force to attempt to prevent the swallowing of evidence, particularly when a search for evidence is underway pursuant to a warrant, police officers may not constitutionally beat and choke suspects in order to gain that evidence. See People v. Parham, 60 Cal.2d 378, 33 Cal.Rptr. 497, 384 P.2d 1001 (1963); State of Washington v. Williams, 16 Wash.App. 868, 560 P.2d 1160 (1977). In so doing, these officers used unreasonable force to recover the evidence, thus offending the fifth amendment guarantee of due process and causing the evidence so recovered to be inadmissible at defendant's trial.
The state urges us to adopt a rule it alleges is prevalent in some jurisdictions which would allow the choking of a suspect *269 so as to recover physical evidence. United States v. Harrison, 139 U.S.App.D.C. 266, 432 F.2d 1328 (1970); Espinoza v. United States, 278 F.2d 802 (5th Cir. 1960); State of New Jersey v. Santos, 101 N.J.Super. 98, 243 A.2d 274 (1968). We do not find the legal principles in those cases different from those we here adopt. Those opinions recognize that the application of unreasonable force in the recovery of physical evidence offends due process, but find, on the facts there presented, that the force used was reasonable. In none of those cases was a suspect beaten at all, much less with the intensity of the beating administered to defendant Tapp.
In addition to the due process violation heretofore described, we also find that the search and seizure offended the fourth amendment. Unlike the situation in Schmerber, the extraction of this evidence was not the result of painless, medically approved procedures.[4] Nor was there the need for speed in the gaining of evidence which the Schmerber court found persuasive. We see no evidence in the record (and indeed, the state does not so argue) that this material, if swallowed, would not have traveled through defendant's body without destruction of the evidence or harm to defendant. See generally, Venner v. State of Maryland, 279 Md. 47, 367 A.2d 949 (1977); People v. Bracamonte, 15 Cal.3d 394, 124 Cal.Rptr. 528, 540 P.2d 624 (1976). We hold that this was not the "minor intrusion into an individual's body under stringently limited conditions" approved in Schmerber, 384 U.S. at 772, 86 S.Ct. at 1836, but rather a grievous, dangerous, painful and unjustifiable assault upon a human being in an effort to get physical evidence from inside his body. The evidence against him so obtained should not have been admitted at the trial because it was gained in violation of the fourth amendment.
We find therefore that the seizure of the packet of heroin from defendant Tapp's throat exceeded the constitutional limitations of the fourth amendment requirement that safeguards the right to be free from unreasonable searches and seizures, and of the fifth and fourteenth amendments which assure individuals fair and humane treatment by law enforcement officers. Thus, the packet of heroin extracted from defendant's person should not have been admitted into evidence against him.
We turn now to the issue of the validity of the search warrant gained for the second residence, a warrant granted partially on the basis of the heroin seized from defendant's person.
The facts of these various searches bear repeating. Officers had gained a search warrant for defendant Tapp's residence on Lowerline Street because of an informer's tip.[5] The application for that warrant gave no indication of any place other than the Lowerline address where defendant Tapp might have hidden his suspected contraband. The search of the Lowerline address was fruitless, except for a heroin residue on a single syringe admittedly not belonging to defendant. See note two. But police did *270 recover five packets of heroin from Tapp's person in the unconstitutional manner already described. Police also interviewed defendant's children, ages 8 and 5, who had arrived at the house with Tapp. Although they indicated no criminal activity on Tapp's part, they did direct the officers to a nearby house from which they had come and indicated that their father owned this house also. The officers then applied for and received a warrant to search this Palmetto Street residence, a search which produced a large quantity of heroin. This warrant is based primarily upon the seizure of heroin from defendant's person, a seizure we have already found invalid under both the fourth and fifth amendments. The affidavit relies secondarily upon information gleaned from Tapp's small children that their father maintained another residence, but as previously explained, the children supplied no information relating to criminal activity. Thirdly, the affidavit relates that a reliable and confidential informant had stated that he had been present at the Lowerline Street address when defendant left "in order to procure additional amounts of heroin and exhibited a belief that the stash pad was in close proximity to Tapp's residence due to the fact that Tapp was absent for only a quarter of an hour before returning with the contraband." This informer tip offered no indication of the location of the surmised "stash pad," no personal observation or knowledge of the existence of a second residence, and, of course, no personal or recent observation of contraband at such a place. See State v. Humble, 309 So.2d 138 (La.1975); State v. Paciera, 290 So.2d 681 (La.1974). In summary, then, the warrant was issued on the basis of an unconstitutional seizure, innocent information from two children as to a particular address, and an uncorroborated hunch from an unidentified tipster that he "believed" that defendant Tapp might have a "stash pad" at an unknown location.
This warrant was invalid. In State v. Jenkins, 340 So.2d 157, 174 (La.1976), we held under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1971) that:
"in determining whether information obtained by officers in the conduct of an unlawful search was used to acquire other evidence against an accused, the test to be applied is not whether, but for the illegal search the evidence would not have been obtained, but rather `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"
We hold that the illegally seized material tainted the warrant which depended on it, and that the independent portions of the warrant (the informant's hunch and the innocent address) do not offer a showing of probable cause upon which a person's privacy may be invaded.
For these reasons, we find that the affidavit in support of the search warrant issued for the Palmetto Street address is fatally deficient, and that the trial court therefore erred in denying relator's motion to suppress based on that deficiency.

Decree
For these reasons, defendant's convictions and sentences are reversed and the case remanded to the district court.
REVERSED AND REMANDED.
DENNIS, J., concurs and assigns reasons.
SANDERS, C. J., dissents and will assign written reasons.
SUMMERS and MARCUS, JJ., dissent.
DENNIS, Justice, concurring.
Although all evidence is not "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police, Nardone v. United States, 308 U.S. 388, 60 S.Ct. 266, 84 L.Ed. 307 (1939), when the facts of this case are considered in terms of the factors set forth in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), particularly "the purpose and flagrancy of the official *271 misconduct," 422 U.S. at 604, 95 S.Ct. at 2262, it is impossible to say that the evidence was come at by means sufficiently distinguishable to be purged of the primary taint.
I respectfully concur.
SANDERS, Chief Justice (dissenting).
In my opinion, the majority erroneously interprets the struggle between the officers and the defendant as one in which the officers' only goal was to extract the heroin from the defendant's mouth. The record clearly indicates that the police action was aimed at both preventing the defendant from effectuating his escape and seizing the contraband. As the police had two objectives, their action must be allocated between these objectives.
When the officers attempted to place the defendant under arrest, he immediately ran, placing the cellophane packet in his mouth. An officer attempted to grab him from the rear, but the defendant resisted. Other officers joined in the struggle. The defendant continued to resist, fighting and kicking the officers. In a stipulation by the State and defense, the officers admitted that they hit the defendant three times before he was subdued.
Louisiana Code of Criminal Procedure Article 220 provides:
"A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained."
Under this codal provision, I believe the officers' action in using force to effectuate the arrest justified. See Logan v. Swift, La.App., 327 So.2d 168 (1976).
Whether police action in extracting contraband from the defendant's person is unreasonable, uncivilized, or shocking depends upon the totality of the circumstances. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). As I construe the record, the only police action that may be directly attributed to the seizure of the evidence is the police's choking the defendant and their order to expel the packet. The issue then becomes: is the choking and the command unreasonable, uncivilized, or shocking. I think not.
In State v. Wood, 262 La. 259, 263 So.2d 28, 32 (1972), this Court upheld a denial of a motion to suppress in a somewhat similar situation. Therein we stated:
"It is common knowledge that narcotic offenders often try to swallow narcotics to defeat the law enforcement process. Law enforcement officers, of course, may adopt reasonable measures to retrieve the contraband. In the present case, the officers used a spoon to remove the particles of marijuana from the defendant's tongue. Under the circumstances, the action of the officers was neither cruel nor bizarre. As the United States Supreme Court observed in Schmerber v. California, the officers were confronted with an emergency that threatened the destruction of evidence."
Several courts in other jurisdictions have upheld similar seizures. State v. Young, 15 Wash.App. 581, 550 P.2d 689 (1976) (the officer "placed his hands on his throat, constricting his ability to swallow" and another officer pinched his nose to make the defendant breathe through his mouth and spit out the evidence); United States v. Harrison, 139 U.S.App.D.C. 266, 432 F.2d 1328 (1970) (the officer grabbed the defendant by the throat and made him expel the evidence); State v. Santos, 101 N.J.Super. 98, 243 A.2d 274 (1968) (the officers grabbed the defendant by the throat and tried to pry his mouth open); Espinoza v. United States, 278 F.2d 802 (5th Cir. 1960) (the officers choked the defendant and attempted "to pry open his mouth by placing pressure against his jaw and nose"); State v. O'Shea, 16 N.J. 1, 105 A.2d 833 (1954) (the officers struggled with the defendant and "forced him to disgorge the papers he was attempting to swallow").
Considering the facts of this case and the cited jurisprudence, I conclude that the record *272 supports the trial court's ruling that the evidence was reasonably seized. Thus, I would affirm the denial of the motion to suppress.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Defendant's motion to suppress and second supplemental motion to suppress raise issues regarding the validity of the search warrants utilized in this case. Because of our resolution herein, we do not reach the issue of the first (Lowerline Street) warrant nor the issue raised in defendant's second assignment of error regarding his efforts to bifurcate the trial.
[2] One of the persons in the house later admitted to possession of this syringe, the seizure of which is not now before us.
[3] In this regard, the state and defense stipulated "that Officer Coe, in an attempt to stop the defendant from swallowing what he believed to be contraband material, choked the defendant, and as a result of the fight and the choking of the defendant, the defendant spit out the material which was recovered in evidence."
[4] In United States v. Cameron, 538 F.2d 254 (9th Cir. 1976), the court reversed defendant's conviction finding that the warrantless search of defendant's rectal cavity which produced a container of heroin violated the fourth amendment. The court stated:

"a clear indication that the suspect is concealing contraband does not authorize government officials to resort to any and all means at their disposal to retrieve it. . . . Any body search, if it is to comport with the reasonableness standard of the fourth amendment, must be conducted with regard for the subject's privacy and be designated to minimize emotional and physical trauma.
* * * * * *
As in the case before us, the suspect usually faces this ordeal without assistance, surrounded by persons who administer the procedure on behalf of the government and thus appear to him to have as their overriding motive the obtaining of evidence to convict, and not his personal well being. In a situation thus laden with the potential for fear and anxiety, a reasonable search will include, beyond the usual procedural requirements, reasonable steps to mitigate the anxiety, discomfort, and humiliation that the suspect may suffer." 538 F.2d at 258
[5] The validity of that warrant is strongly contested, but we do not reach that issue, see note one, and assume for present purposes that the warrant was valid.