499 So.2d 1282 (1986)
STATE of Louisiana
v.
Tyrone TURNER.
No. KA-5799.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
*1283 George R. Simno, III, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Terry M. Boudreaux, Asst. Dist. Atty., New Orleans, for appellee.
Before GULOTTA, REDMANN and CIACCIO, JJ.
CIACCIO, Judge.
Defendant, Tyrone Turner, was charged with possession of a controlled dangerous substance, pentazocine, (i.e., Talwin) with the intent to distribute. LA.R.S. 40:967. A jury found the defendant guilty as charged. He was sentenced as a multiple offender and ordered to serve twenty years at hard labor without probation, parole, suspension of sentence or good time. Defendant appeals his conviction and sentence relying on one assignment of error. We affirm.
At approximately 5:30 p.m. on the evening of December 11, 1984, acting upon information provided by a confidential informant, New Orleans Police Officers Jacklean Davis and Wayne Farve accompanied by the confidential informant, proceeded to a residence located at 1711 N. Peters in the Lafitte Housing Project in New Orleans in an attempt to purchase illegal narcotics. While Farve remained in the unmarked vehicle parked in an adjacent driveway, Officer Davis accompanied the informant to the door of the residence. The facts surrounding the narcotics purchase are in conflict.
According to Officer Jacklean Davis, when she and the informant reached the apartment in question, the informant called to "Tracy." The door of the apartment was opened by a juvenile, later identified as Tracy Tennessee. Officer Davis observed the defendant seated at the kitchen table which was parallel to the door. Davis, who had $50 in her hand asked to buy a "bundle of sets." The defendant looked at the undercover agent, confidential informant and Tracy Tennessee. He nodded. Thereafter he instructed the juvenile to shut the door, which she did. Davis testified that she then heard the defendant tell the juvenile to "reach to get a bundle on top of the refrigerator." A short time later the door was opened. Tracy Tennessee handed the "bundle" to Davis and received $50 as the defendant looked on. After engaging in a brief conversation with Carolyn Tennessee, the juvenile's mother, the undercover policewoman and the confidential informant left the apartment and returned to the police station. Officer Davis relayed the facts surrounding the purchase to Police Officers Kevin Doucette and Swain who drew up an application for a search warrant based upon this information.
A search warrant was issued by the judge. Officers Davis, Doucette, Kim Bivens and one other officer returned with the search warrant to the site of the narcotics purchase. While Officer Davis remained in the police car the three remaining officers served the search warrant. The search of the apartment resulted in 275 units of Talwin being seized from atop the refrigerator and 180 additional units of Talwin being secured from beneath a mattress in an upstairs bedroom. The search also resulted in $32.00 in currency being seized.
According to Officer Davis, while the search warrant was being executed she remained downstairs in the parked car. According to Davis, while seated in the car she observed the defendant accompanied by two black men as they drove to the N. Peters Street address. Upon detecting the activity at the apartment, the defendant told the car's driver to proceed onward without stopping.
Following the search, police arrested the three occupants of the apartment who were present during the search: Tracy Tennessee, *1284 Carolyn Tennessee and Clarence Jones. The arresting officers and subjects returned to police headquarters where they presented the seized evidence to Police Officer Bivens for preservation. According to the criminologist report, one-half of the drugs seized (i.e., the blue tablets) tested positive for pentazocine, while the other one-half (i.e., the yellow tablets) tested negative for any drug violation.
According to the defendant's mother, Carolyn Tennessee, his sister, Tracy Tennessee, and his brother, Edward Tennessee, the defendant was not present in the apartment on the afternoon of this offense. According to these witnesses, an acquaintance, Wardell Hunter, was present in the apartment and was the one who sold the narcotics to the undercover agent and the informant. Wardell Hunter however denied he was present in the apartment.
Abraham Reed, a friend of the defendant, testified that he and the defendant spent the afternoon riding around New Orleans East searching for a lady who had sold the defendant an automobile, in order that they could secure her signature on a transfer of title.
Finally, Carolyn Tennessee who admitted seeing Wardell Hunter enter her apartment carrying a bag denied being present at the time of the narcotic purchase. According to Ms. Tennessee she was at the doctor's office at the time of this offense. Her treating physician, in referring to the sign in records of his office estimated that she was there within a time frame that could be approximately the same as the time the offense occurred.
In his sole assignment of error, the defendant contends that there was insufficient evidence to support his conviction.
The defendant was charged with the possession with the intent to distribute pentazocine, a Schedule II narcotic. R.S. 40:967 and 40:964. In such cases "possession" includes not only actual physical possession, but also constructive possession. One has constructive possession if he exercises dominion and control over the illegal substance. State v. Trahan, 425 So.2d 1222 (La., 1986). The State, in such cases, bears the burden of proving the defendant knowingly possessed the drug. State v. Trahan, supra.
In this case, although conflicting stories were given regarding the offense, Officer Jacklean Davis, the undercover officer, positively identified the defendant. She also testified that she and the confidential informant were invited into the apartment on North Peters Street where the defendant was present. After the informant presented the defendant $50.00 in cash and requested a "bundle of sets," the defendant instructed Tracy Tennessee to secure the "bundle" from atop the refrigerator and present it to the informant.
The testimony of this witness clearly established that Tyrone Turner was the person involved in this drug distribution and that he exercised such dominion and control over the illegal substance so as to "possess" the illegal substance with the intent to distribute.
Thus, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2981, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La., 1982).
Although there was conflicting evidence regarding the defendant's presence at the crime scene and his involvement in this offense, this presents an issue of evaluation of credibility which lies within the province of the jury to resolve as the trier of fact. State v. Shepherd, 332 So.2d 228 (La.1976); State v. Bailey, 457 So.2d 94 (La.App., 4th Cir., 1984). Such findings, that one witness is more credible than another, will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La., 1984).
In this case the jury determined that Officer Davis' depiction of the facts was true. Such a determination was within the province of the jury and their finding that *1285 the defendant was guilty as charged is supported by the evidence.
Accordingly this assignment of error lacks merit.
We have also reviewed this record for errors patent on its face and we find none.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.