548 So.2d 345 (1989)
STATE of Louisiana
v.
James BOLTON.
No. KA 9064.
Court of Appeal of Louisiana, Fourth Circuit.
August 10, 1989.
*346 D. Michael Dendy, Gretna, for appellant.
Harry F. Connick, Dist. Atty., Charles L. Collins, Asst. Dist. Atty., New Orleans, for appellee.
Before BYRNES, CIACCIO and BECKER, JJ.
CIACCIO, Judge.
James Bolton was charged with and convicted of distribution of heroin. La.R.S. 40:966. He was sentenced to life imprisonment without benefit of parole. He appeals his conviction and sentence on the basis of three assignments of error. We affirm.
On January 13, 1987 at approximately 3:30 p.m. a surveillance was conducted in response to a citizen's call to the effect that there was heroin trafficking in the area and drugs were being stored at the location of 1728 Martin Luther King Boulevard. Additionally, there had been a complaint that James Bolton was trafficking drugs in the neighborhood and he had been under investigation, with his brother, for this complaint. On the date in question New Orleans Police Officers Clarence Weathern and Wayne Farve saw Bolton in front of the residence at 1723 Martin Luther King when a red van drove up. The van contained a white male driver and female passenger. The occupants were recognized by the police officers as being Jerry Bergeron and Peggy Bergeron (a/k/a Ray, a/k/a *347 Carpenter) who were known heroin users. The pair had, on a previous occasion, been stopped by Officer Weathern in the company of James Bolton. Jerry Bergeron exited the van, walked over to the front of 1723 Martin Luther King Boulevard and talked to James Bolton. Thereafter Bolton went to the house at 1728 Martin Luther King and he returned to the driver's side of the van with a package. He opened the package and counted out two small objects and placed them in the hand of the female occupant of the van. She then handed him what appeared to be currency. Bolton appeared to count the currency. Thereafter the van with the two occupants left the scene, drove to the corner of Martin Luther King and Baronne Streets and turned left. The policemen on the scene radioed to other police cars in the area. Officers Rice, McNeil and Simpson were advised that the drug transaction had occurred and for them to follow the Bergeron vehicle, which they did.
At the intersection of Howard and O'Keefe Avenues the policemen stopped the Bergeron vehicle. Officers McNeil and Simpson approached the passenger's side and Officer Rice went to the driver's side of the van. The female occupant of the van then attempted to swallow something. Fearing she was swallowing the evidence, Officer Simpson took her by the throat and told her to "spit it out." She then expelled the two packets from her mouth into his hand. The subjects were placed under arrest and they and the evidence were transported to police headquarters. The evidence was secured, later tested and found to be heroin. The female's wrist and hands were examined and found to contain track marks compatible with drug usage.
During this time James Bolton had left the crime scene in another van which was occupied by one of his brothers. After the arrest of the occupants in the Bergeron van, the policemen who had been present at the scene of the drug transaction were informed of these arrests. They located James Bolton at his brother's house on St. Andrew Street, some 2-3 blocks away, and they placed him under arrest.
Assignments of Error Nos. 1 and 3
In his first assignment of error the defendant contends the trial court erred in denying the motion to suppress the evidence. Bolton reasons that the evidence should have been suppressed because the police officers did not have reasonable suspicion to stop the Bergeron van, search the occupants and seize the heroin.
To temporarily detain a person for purposes of investigation an officer must have a reasonable suspicion that the person is committing, has committed or is about to commit a crime. La.C.Cr.P. Art. 215.1. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Sims, 426 So.2d 148 (La., 1983). "Reasonable suspicion" for an investigatory stop is something less than probable cause and must be determined under the facts of each case by a consideration of whether the police officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Square, 433 So.2d 104 (La., 1983); State v. Keller, 403 So.2d 693 (La., 1981).
In this case the police had received phone calls advising them that Bolton was trafficking heroin and that he was keeping his drugs at 1728 Martin Luther King Boulevard. The area is known to the police as a high drug traffic area. Jerry Bergeron and his female companion were known to the officers as heroin users. The officers observed James Bolton as he went into the house at 1728 Martin Luther King Boulevard after having been contacted by Bergeron. They also observed him as he went to the side of Bergeron's van and exchanged what appeared to be two packets for currency. These facts establish reasonable suspicion that the occupants of Bergeron's van had purchased drugs and thus the stop of the vehicle was legal.
The defendant further complains that the forcible extraction of heroin from the mouth of the female suspect constituted an unreasonable search and seizure. U.S. Const. Amend. 4; La. Const. Art. 1, Sec. 5.
The defendant relies on State v. Tapp, 353 So.2d 265 (La., 1977) for support of this *348 position. Although the Louisiana Supreme Court in Tapp, supra found the search and seizure unreasonable, that case is factually distinguishable from the present in the nature and extent of the intrusion. In State v. Tapp, supra, the defendant walked in on the police as they were conducting a warranted search of his house. Upon seeing the officers the defendant put a small tinfoil object covered in cellophane into his mouth and the following events transpired prior to the seizure of the evidence:
Because the officers believed he was trying to swallow a packet of heroin, the three officers set upon him and attempted to force the packet out of his mouth. Tapp resisted their efforts and the ensuing fight rolled onto the front porch, down the steps, and into the yard where two other officers joined the fight. One officer held his hands around defendant's throat in an effort to prevent him from swallowing the evidence. According to the officers, they pummelled defendant in the face and head with their fists, and called on defendant to "Spit it out!" According to defendant's uncontradicted testimony one officer eventually held defendant's nose in an effort to cut off his breathing. The officers estimated that the fight, which one of them described as "one hell of a fight." lasted fifteen to twenty minutes. Eventually the five officers successfully caused defendant to spit up the packet, which was then apparently lodged near or at the top of his esophagus, and they arrested him for heroin possession. Defendant Tapp and two of the officers were taken to the hospital for treatment of their injuries. State v. Tapp, Id. at 267.
The present set of facts regarding the seizure of evidence are more closely akin to those in State v. Winfrey, 359 So.2d 73 (La., 1978). In Winfrey, supra at 73, these events occurred:
As Officers Bourg and Welsh patrolled Claiborne Avenue in New Orleans one night, they observed an automobile traveling without its lights on. The defendant drove that automobile and his co-defendant at trial was the passenger. With the intention of giving him a warning, the officers pulled the defendant over.
Upon stopping, the officers shined a spot light into the defendant's rear-view mirror, and approached the car with flashlights. They saw the defendant and the passenger lean toward the middle of the seat, pick up some objects, and place them in their mouths. When Officer Bourg arrived at the driver's window, he saw the defendant crumble small pieces of foil and put them into his mouth. Officer Welsh observed the passenger swallow the objects he had placed in his mouth. A roll of tin foil lay on the front seat.
Officer Bourg immediately informed the defendant that he was under arrest. When he opened the door, the defendant slammed it shut. He then began to struggle as Officer Bourg attempted to remove him from the car. During this time, the defendant threw a bundle of money to the rear of the car. To retrieve the objects from his mouth, the officer placed one hand by his mouth to get his fingers into it and the other hand on his throat to prevent him from swallowing. Officer Bourg succeeded in removing twenty-two packets of heroin. The struggle lasted approximately one to two minutes.
In upholding the seizure as reasonable under the Fourth Amendment of the U.S. Constitution, the Louisiana Supreme Court in Winfrey, supra, at 77, stated:
Whether police action in extracting contraband from the defendant's person is unreasonable depends upon the totality of the circumstances. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Law enforcement officials may adopt reasonable measures to retrieve contraband and prevent its destruction. State v. Wood, 262 La. 259, 263 So.2d 28 (1972).
To recover the contraband, Officer Bourg held the defendant with one hand so that he might put his fingers in his mouth and with the other hand to prevent *349 him from swallowing. This occurred during a one to two minute struggle which the defendant initiated. There were no injuries.
We conclude that Officer Bourg used reasonable measures in procuring the heroin. His actions do not shock the conscience or "offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically..." Rochin v. California, supra.

In the present case the struggle to retrieve the contraband was short in duration and limited in extent. No injuries resulted. Under the circumstances the measures utilized to retrieve the contraband and prevent its destruction were reasonable.
Additionally, once the heroin was retrieved, it corroborated the information received by the officers who had observed the apparent drug transaction and thus, provided probable cause for the defendant's arrest.
The trial court did not err in refusing to grant the defendant's motion to suppress the evidence.
By assignment of error number 3 the defendant alleges that the trial court erred in refusing to re-open the hearing on the motion to suppress. The motion to re-open was made after the close of all testimony but before the closing arguments and it was based upon the decision in State v. Tapp, supra.
Since we find that State v. Tapp, supra, is factually distinguishable from the instant case and that State v. Winfrey, supra, is controlling, we conclude that the trial court did not err in refusing to reopen the hearing on the motion to suppress the evidence. This assignment lacks merit.
Assignment of Error No. 2
Defendant argues by this assignment of error that there was insufficient evidence to convict him of the crime charged. In this regard he contends that Ms. Peggy Bergeron (a/k/a Ray, a/k/a Carpenter) was not a credible witness, as she was promised reduced charges in exchange for her testimony.[1]
This assignment lacks merit. This court will not review issues of credibility on appeal. State v. Turner, 499 So.2d 1282 (La. App., 4th Cir., 1986).
Additionally, the evidence viewed in the light most favorable to the prosecution was sufficient to support the jury's verdict. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The defendant was charged with distribution of heroin. La.R.S. 40:966.
The record reveals that the policemen observed an apparent drug transaction between James Bolton and the male and female occupants of the red and grey van. The female occupant of the van was found in possession of the substance which tested positive for heroin. She thereafter testified that the defendant had distributed the narcotic.
This assignment lacks merit.
In addition to the defense assignments of error, we have reviewed this record for errors patent on its face. In this regard we observe one such error.
The trial court in this case sentenced the defendant to life imprisonment without benefit of "parole." Although Louisiana Revised Statute Title 40 Section 966 provides for imposition of such a sentence without benefit of probation or suspension of sentence it does not provide that the sentence is to be without benefit of parole. As such we amend the defendant's sentence to delete the provision that it is to be served without benefit of parole.
For these reasons the defendant's conviction is affirmed, his sentence is amended to delete the provision that it is to be served without benefit of parole and as amended, the sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED and AFFIRMED.
NOTES
[1] It is noteworthy that the promises made to this witness were fully disclosed at trial.