593 So.2d 965 (1992)
STATE of Louisiana
v.
Lloyd L. DESMOND.
No. 91-KA-0143.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1992.
Rehearing Denied March 18, 1992.
*966 Harry F. Connick, Dist. Atty. and Martin Melton, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant-appellant, Lloyd L. Desmond.
Before KLEES, BYRNES and JONES, JJ.
KLEES, Judge.
Defendant was charged by bill of information with possession of cocaine, a violation LSA-R.S. 40:967. After a hearing on May 5, 1989, the trial court denied defendant's motion to suppress the evidence. Defendant was tried by a six member jury on August 26, 1989 and was found guilty as charged. He was sentenced on September 8, 1989 to five years at hard labor. *967 The State then filed a multiple bill and, after a hearing on February 16, 1990, defendant was adjudicated a third felony offender. His original sentence was vacated and he was sentenced as a multiple offender to ten years at hard labor. Defendant appeals urging two assignments of error. 1. The trial court erred in denying his motion to suppress evidence. 2. The trial court erred in its charge to the jury on reasonable doubt.
FACTS
On March 7, 1988, Officers Ronald Doucette and Edmond Melder were working a drug task force detail and patrolling in uniform in an unmarked, standard issue white police car. As the officers turned onto the 1500 block of Dumaine Street, one or both of them saw defendant walk from steps in front of a house toward the police vehicle. Upon seeing the vehicle, defendant turned and walked back toward the steps. As he turned, defendant brought his right hand to his mouth. According to Doucette, defendant was placing something plastic in his mouth, which Doucette believed contained narcotics. At trial (though not at the motion hearing), Doucette testified that a second person who was walking past defendant alerted him to the presence of the police, at which point defendant turned and put the object in his mouth.
Officer Doucette exited the vehicle and began yelling obscenities at defendant and ordering him to stop. He grabbed defendant by the throat to prevent him from swallowing and was yelling "give it up!" Defendant resisted and struggled with the two officers. At the hearing on the motion to suppress the evidence, Doucette testified that defendant continued fighting until the officers finally "slammed him to the ground and handcuffed him." At trial, both officers testified that, after a fight, the three of them "ended up" on the pavement, and that when they were handcuffing defendant, they found two packets of a white powder next to him on the ground. Officer Doucette testified that defendant acted as if he was unconscious, and Officer Melder testified that defendant was not unconscious.[1]
The officers testified that defendant was taken to Central Lockup then relocated to Charity Hospital when he complained of injuries sustained in the altercation. Doucette stated that defendant was uncooperative, loud and boisterous at the hospital. However, he stated he wanted to be treated, "but he just would not cooperate with them as far as the treatment is concerned." Doucette stated that a tube was inserted into defendant's trachea and another was placed in his nose and sent down into his stomach, and he had x-rays "and the whole nine yards." Officer Melder testified that they took defendant to the hospital "to get checked out for his own health and for reasons we believed he had swallowed a couple of the packets of cocaine." He was treated by hospital staff doctors and kept overnight for observation. He was returned to Central Lockup at approximately 5:00 o'clock the next morning.
Defense counsel presented three witnesses.
Freddie Fisher III testified that he had been speaking with the defendant on the day in question. After defendant walked a few houses down, Fisher saw the police jump on defendant and scuffle, and then he saw defendant on the ground. It appeared that defendant had been knocked unconscious. The officers then walked around as if looking for something. One officer went through the defendant's pockets, but Fisher did not see the officer take anything out of the pockets. Fisher did not see the officers stoop down and pick anything up. One officer went into "Linda's" house and also looked around her steps. The witness stated he considers defendant a friend and he had known him for twenty years. He stated he remembered what happened but could not recall what type the police car was or what anyone was wearing. Fisher stated it looked as if the police tried to choke defendant, and they hit him a number *968 of times. The witness admitted that he had done heroin about ten years previously.
Linda Saulsberry testified as follows: she saw a police officer jump out of his car and yell at defendant, "you black motherfucker, don't swallow it." The officer choked the defendant, threw him to the ground and handcuffed him. Saulsberry then went to the kitchen to turn down the stove, and the police began banging on her door. She stated the police had jumped her gate, which was locked at the time, and searched her yard. One officer was trying to harass her and asking if the defendant had come from her house, and the other officer apologized for their having disturbed her. She saw that defendant was still lying on the ground and he appeared to be unconscious. She did not see the police pick anything up off the ground, but she saw one officer go into one of defendant's pockets. She did not see the defendant fight back with the police. Saulsberry stated she had known defendant approximately two years, and he had been in her house several times to use the phone. She could not remember the clothes defendant wore that day.
The third defense witness, Alvin Picquet, testified that he witnessed the arrest. He testified as follows: Defendant was simply walking on Dumaine when the police officers drove up, jumped out of the car and began fighting with defendant. Both officers hit defendant with their fists. They knocked defendant to the ground and, in doing so, rendered him unconscious. The police then told the crowd to back away. They dragged defendant to the police car. Picquet did not see the officers pick anything up from the ground, nor did he see them search any other area. He stated the police officers were in uniform in a white, unmarked car. The witness admitted he had been in jail with defendant (in "tent city") and had spoken with him, but stated they did not discuss this case. He had known defendant approximately fifteen or twenty years.
Errors Patent
A review of the record for errors patent reveals there are none.
Suppression of the Evidence
Defendant argues that the officers did not have reasonable grounds for an investigatory stop and, even if the stop was warranted, the search was unreasonable.
Reasonable cause for an investigatory stop is something less than probable cause for arrest and must be determined under the facts of each case. The issue is whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. The right to make an investigatory stop must be based upon reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La.1984), cert. den., Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Belton, 441 So.2d 1195 (La.1983), cert. den., Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The detaining officer must have knowledge of specific, articulable facts which reasonably warrant the stop. State v. Lee, 462 So.2d 249 (La.App. 4th Cir.1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, supra, U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
La.C.Cr.P. art. 215.1 allows a police officer to stop a person in a public place whom "he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." While flight, nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable cause to make an investigatory stop, these facts may be highly suspicious and lead to a finding of reasonable cause to detain an individual. State v. Belton, supra.
Officer Doucette testified that when defendant saw the officers, he placed some sort of plastic in his mouth and turned around to walk away from the officers. He stated that his experience as a police *969 officer led him to believe the plastic contained contraband. Officer Doucette also testified that he had information that there had been a lot of cocaine in the area. However, the trial judge sustained defense counsel's objection to this testimony, though there was neither an admonition nor request for same. Doucette further testified he thought he saw defendant engage in a narcotics transaction, but did not elaborate. By observing the defendant place a plastic packet in his mouth (while turning to walk back in the direction from which he had just walked) upon seeing the officers, and based on his experience as a narcotics officer, Doucette had reasonable suspicion that defendant was attempting to swallow contraband and therefore had a reasonable basis for an investigatory stop. In State v. Tapp, 353 So.2d 265 (La.1977), the court indicated such action was sufficient basis upon which to arrest that defendant for possession of narcotics (although the court found the evidence should have been suppressed because the police used excessive force in retrieving the evidence from that defendant's mouth).
Relying on Tapp, defendant further argues that, even if the officers were justified in initially approaching defendant, their search of defendant involved such excessive force that it violated the Louisiana constitutional prohibition against unreasonable searches.
Law enforcement officials may adopt reasonable measures to retrieve contraband and prevent its destruction. State v. Wood, 262 La. 259, 263 So.2d 28 (1972); State v. Bolton, 548 So.2d 345 (La.App. 4th Cir.1989). Although policemen can use reasonable force to prevent the swallowing of evidence, officers may not constitutionally beat and choke suspects in order to gain that evidence. State v. Tapp, 353 So.2d 265 (La.1977). Whether police action in extracting contraband from the defendant's person is unreasonable depends upon the totality of the circumstances. Schmerber v. California, 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).
In Tapp, police officers were executing a search warrant when the defendant walked in the front door. Upon seeing the officers, he put a small tinfoil object covered with cellophane into his mouth, which the officers believed to be heroin. The officers tried to force the packet from defendant's mouth and in the ensuing fight they rolled onto the front porch, down the steps, and into the yard. There, two other officers joined the fight. One officer held his hands around defendant's throat to stop him from swallowing. The officers candidly testified that they pummelled defendant in the face and head with their fists and yelled at him, "Spit it out!" They also held defendant's nose to cut off his breathing, and defendant eventually spit out the packet. The fight lasted fifteen to twenty minutes.
The Supreme Court noted the lack of evidence in the record that the material, if swallowed, would not have traveled through defendant's body without destruction or harm to defendant. The Court found that "this was not the `minor intrusion into an individual's body under stringently limited conditions' approved in Schmerber [v. California], 384 U.S. at 772, 86 S.Ct. at 1836, but rather a grievous, dangerous, painful and unjustifiable assault upon a human being in an effort to get physical evidence from inside his body." 353 So.2d at 269. The Court held that the seizure of the packet of heroin from Tapp's throat exceeded the constitutional limitations of the Fourth Amendment protection against unreasonable searches and seizures, and of the Fifth and Fourteenth Amendments which assure individuals fair and humane treatment by law enforcement officers.
In Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), defendant swallowed two capsules on his nightstand when police officers, acting on an anonymous tip, burst into his bedroom. In an effort to extract the capsules, the officers "jumped on" defendant and a struggle ensued. The officers then handcuffed defendant and took him to a hospital. There, at the officers' direction, a doctor forced an *970 emetic solution through a tube into Rochin's stomach against his will, inducing vomiting. In the vomited matter, the officers found two capsules later found to contain morphine. The Court held that the evidence should have been excluded at trial because obtained by methods that offend the Due Process Clause.
In State v. Bolton, 548 So.2d 345 (La. App. 4th Cir.1989), the police had received information that defendant was trafficking heroin and information as to the specific address at which he was storing the heroin, which was in an area known to the police as a high drug traffic area. The police conducted a surveillance of the address. They observed the following: two known heroin users drove up to defendant in a van and spoke to him; defendant walked to the specified address and returned to the driver's side of the van with a package; defendant counted out two small objects and placed them in the hand of the female occupant in exchange for what appeared to be currency. Based on this information, the van was stopped by officers. When the female occupant attempted to swallow something, one officer took her by the throat and told her to "spit it out." She expelled two packets of heroin from her mouth into his hand. This Court rejected defendant's argument that the forcible extraction of the heroin constituted an unreasonable search and seizure. The court noted that the struggle to retrieve the contraband was short in duration and limited in extent, and no injuries resulted. The court found that under the circumstances the measures utilized to retrieve the contraband and prevent its destruction were reasonable.
In State v. Winfrey, 359 So.2d 73 (La. 1978), officers pulled the defendant over during a routine traffic stop. They observed the defendant and passenger pick some objects up from the middle of the seat and place them in their mouths. One officer saw the defendant place pieces of foil in his mouth. He informed defendant he was under arrest; a struggle ensued during which the officer placed one hand by defendant's mouth and the other hand on his throat to prevent him from swallowing. He succeeded in removing twenty-two packets of heroin. The Supreme Court noted that the struggle was initiated by defendant; it lasted only one to two minutes; and there were no injuries.
In the instant case, the uncontradicted and undisputed testimony is that Officer Doucette yelled obscenities at defendant and grabbed him by the throat to prevent swallowing, and according to Officer Melder's uncontradicted testimony, both officers had their hands around defendant's throat, although not at the same time. Though the testimony of both officers at trial (that they "ended up" on the ground with the defendant) indicates that all three fell to the ground during the struggle, Doucette candidly testified at the motion hearing that they "slammed [defendant] to the ground." When asked at trial if any punches were thrown, Doucette responded, "He started leaning and things like that, and struggling trying to get away from us, and then eventually all three of us went to the ground, and at that time he just like gave up." Doucette testified that defendant "acted as if he was unconscious." All three defense witnesses testified that defendant appeared to be or was unconscious.
As to the retrieval of the two packets of cocaine, Doucette testified at the motion hearing that defendant was successful in swallowing the packets he had placed in his mouth and that they found the two packets next to defendant while handcuffing him after the struggle. At trial, Doucette testified that he saw one packet fall from defendant's hand, and the second packet was on the ground within inches of the first. On cross-examination, Doucette testified that the first packet fell from defendant's mouth to the ground (while defendant was trying to shove the packet in his mouth), in contradiction to his testimony at the motion hearing.
The record indicates that the trial court apparently found the testimony of the officers more credible than that of the defense witnesses. Accepting as true the testimony of the defense witnesses, the worst that *971 happened is that the officers grabbed defendant by the throat, slammed him to the ground, possibly rendering him unconscious, searched his pockets and a neighbor's yard, and found two packets of cocaine. Such force is not so unreasonable under the circumstances and does not rise to the level of force found excessive in Tapp and Rochin.
That one of the two packets of cocaine might have fallen from defendant's mouth does not require suppression of that evidence, since the evidence was not retrieved as a result of excessive force. Further, because the evidence used to convict defendant was found prior to and not as a result of the alleged pumping of defendant's stomach, (contrary to the circumstances in Rochin, supra) such action is irrelevant to the question of whether the officers used excessive force in obtaining the evidence. This assignment is without merit.
Jury Charge on Reasonable Doubt
The defendant also contends that the trial court improperly instructed the jury regarding "reasonable doubt," and argues that, although there was no contemporaneous objection, the court should review this assignment of error as a "plain error." This court recently rejected the same argument in State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991). Because defendant failed to object at the time of the jury charge on reasonable doubt, the objection is considered waived. La.C.Cr.P. art. 841. This assignment of error is not reviewable on appeal since defendant made no contemporaneous objection. See State v. Mack, 403 So.2d 8 (La.1981); Dobson.
Accordingly for the reasons expressed above, the defendant's conviction and sentence is hereby affirmed.
AFFIRMED.
NOTES
[1] Defense counsel asked Officer Doucette, "Isn't it correct you knocked him unconscious and handcuffed him and searched him before you ever picked up anything?" Doucette responded: "He act (sic) as if he was unconscious, all three of us went to the concrete."