665 So.2d 101 (1995)
STATE of Louisiana
v.
Roddie MONTGOMERY.
No. 95-K-1852.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1995.
Writ Denied February 9, 1996.
*102 Harry F. Connick, District Attorney and Michele A. Sottarelli, Assistant District Attorney, Parish of Orleans, New Orleans, for Relator/State of Louisiana.
Martin E. Regan and Kevin Vincent Boshea, Regan, Manasseh & Boshea, New Orleans, for Respondent/Roddie Montgomery.
Before BYRNES, CIACCIO and MURRAY, JJ.
MURRAY, Judge.
The State seeks this court's supervisory jurisdiction to review the granting of the defendant's motion to suppress evidence. We grant the writ and reverse the trial court's ruling.
Officer Fred Thompson testified that on September 28, 1994, at 10:50 p.m., he and his partner, Officer Leon Duncan, observed a group of people standing on the corner of Fourth and Laurel Streets. They believed the group may have been violating the juvenile curfew. When the officers exited their patrol car, several members of the group turned and began to walk away. The officers observed the defendant put something in his mouth as he was walking away. Officer Duncan detained the defendant and asked him his name and age. As the defendant was speaking, Officer Duncan saw that he had something in his mouth, and asked him to spit it out. The defendant told him that he did not have anything in his mouth. Officer Duncan grabbed him and began choking him until he spit out a cellophane packet that contained two rocks of crack cocaine. The defendant was then arrested and advised of his rights whereupon he said that he was a user not a dealer.
The trial court found no error in the officers' initial stop and questioning of the defendants, but ruled that the officers used excessive force in retrieving the evidence.
The defense cites State v. Tapp, 353 So.2d 265 (La.1977), as supporting this ruling. In Tapp the police officers were executing a search warrant when the defendant walked in the door. The court stated:
"When he saw the policemen, he (Mr. Tapp) quickly put a small tinfoil object, covered with cellophane into his mouth. Because the officers believed he was trying to swallow a packet of heroin, the three officers set upon him and attempted to force the packet out of his mouth. Tapp resisted their efforts and the ensuing fight rolled onto the front porch, down the steps, and into the yard where two other officers joined the fight. One officer held his hands around the defendant's throat in an effort to prevent the defendant from swallowing the evidence. According to the officers, they pummeled the defendant in the face and head with their fists, and called on [the] defendant to `Spit it out'." Tapp, 353 So.2d at 267.
This fight lasted fifteen to twenty minutes and ended when one of the officers held the defendant's nose to prevent him from breathing. Id.
The Tapp court found the officer's actions to be excessive force because "the prolonged and brutal struggle to cause Tapp to disgorge the packet ... abused common conceptions of decency and civilized conduct." Id. at 268.
We find the case at bar to be more factually similar to State v. Desmond, 593 So.2d 965 *103 (La.App. 4th. Cir.1992.) In Desmond the officers made a justified stop of the defendant. The officer testified that he saw the defendant place "something plastic in his mouth". Id. at 966. The officer yelled obscenities at the defendant, grabbed him by the throat to prevent him from swallowing and yelled "give it up". Id. Because he resisted the officer's efforts, Mr. Desmond was slammed to the ground. After handcuffing Mr. Desmond, the officers found two packets of a white powder on the ground next to him.
The court ruled that the evidence could be used because the choking and slamming of Mr. Desmond to the ground did not constitute excessive force.
In the case at bar, Mr. Montgomery was justifiably stopped by police. The officers saw Mr. Montgomery put something in his mouth. Upon questioning Mr. Montgomery, one of the officers saw some objects inside the defendant's mouth. The officer then asked Mr. Montgomery what he had in his mouth. After Mr. Montgomery denied he had anything in his mouth the officer grabbed him by the throat and made him spit the objects out. There is no indication that the choking was anything but brief nor is there any indication from the record that Mr. Montgomery required medical attention.
Under these circumstances, the trial court erred in ruling that the officers used excessive force in retrieving the evidence.
WRIT GRANTED; JUDGMENT REVERSED.