[Crim. No. 8400. Second Dist., Div. One. Dec. 13, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ELMER TAHTINEN, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Hayes F. Mead and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from an order denying a motion for a new trial and a judgment of conviction of possessing heroin.

In an information filed in Los Angeles County defendant (appellant here) was charged in Count I with possessing heroin for sale, in Count II with possessing heroin in violation of the provisions of section 11500, Health and Safety Code. Three prior convictions were charged (the first of which was a federal case and involved the unlawful importation and receipt of opium in 1944, the second was for the violation of section 11500, Health and Safety Code, in Los Angeles County in 1949, of which he was convicted, and the third for a similar charge as above set forth with reference to the second prior).

The defendant pleaded not guilty and denied the prior convictions. Later at the time of trial the defendant admitted the first and third charged prior convictions. By stipulation the court was to determine the truth or falsity of the second charged prior conviction. A jury was selected and the trial commenced on March 21, 1962. The next day the jury was waived and after the taking of further testimony before the judge it was stipulated that the case could be determined by the judge upon the evidence theretofore introduced. The judge found the defendant not guilty as to Count I and guilty as to Count II, and found the second charged prior conviction to be untrue. In the signed statement by the judge and the district attorney required under section 1203.01 of the Penal Code it is set forth, "The Judge found two of the priors to be true and gratuitously struck the second prior." The defendant was sentenced to the state prison for the term prescribed by law.

A résumé of some of the facts is as follows: Officer Brown, a qualified expert in the field of narcotics activities and narcotic paraphernalia who knew the effects of narcotics and was fully aware of the conduct of users when they were about to be

arrested for having heroin in their possession, knew the defendant as a former peddler and user of narcotics in the area. The officer also had heard shortly before the arrest that the defendant was using and selling narcotics again. The officer had talked at length with defendant's parole officer about his present activities. In brief, Officer Brown knew of the defendant's prior convictions (in fact Brown had arrested the defendant before) and the defendant had given many indications that he was presently using narcotics and that he was a parole violator. Officer Brown also had talked with the defendant on occasions as to whether "he was fixing narcotics" and knew him as "Elmer." The officers were informed that the defendant was in a room at 111 C Street, Wilmington, and that he had "scored" late the night before. The officers went to the rooming house at the named address about 9:30 a. m. on January 4, 1962, and verified the fact from the landlady that defendant lived in Room 17 of the establishment. The officers asked the landlady to ring the bell in defendant's room in about three minutes. The officers then went up the stairs and placed themselves in the hallway about 6 feet from the doorway to Room 17. The bell to that room rang and defendant stepped out into the hallway at the head of the stairway and calling downstairs said, "Who is it?" At about that moment the officers stepped out from where they had been standing and said, "Hi Elmer." The defendant turned his head and looked, made furtive movements and then with his right hand reached into his upper pocket and took out a package and started to put it into his mouth. Officer Brown was about 4 feet from the defendant when he made the move with his arm toward his mouth. The officer called out, "Hold it Elmer." The officer was convinced from what he knew of the defendant and from what he had heard the day before and from his experience as a narcotics officer that the package which defendant started to put into his mouth contained heroin—and it later was determined from chemical analysis that the substance in the package was heroin. The package spoken of here was a Camel cigarette container enclosing three rubber balloons containing the heroin complained of. The members of this court have had exhibited to them the package, which is approximately $2\frac{3}{4}$ inches long by $2\frac{1}{8}$ inches wide and crushed together so that it appeared to be about three-eigths of an inch or more in thickness. The package in question appears to have been chewed or masticated at one end or corner thereof. Officer Brown attempted to reach the right

arm of defendant in an attempt to stop him from putting the package into his mouth, however the officer was unsuccessful in his endeavor and the defendant did put the package into his mouth.

The officer was of the belief further that the defendant was attempting to destroy evidence of the crime of possessing or selling heroin. The defendant turned toward his room, the officers struggling with him. The defendant strained and pulled backward and the three persons (the two officers and defendant) in the course of events were drawn from the hallway, through the doorway of Room 17 into the defendant's room. One of the officers placed his right hand back of defendant's neck and attempted to press his head forward and downward, to the end that the defendant could not swallow. The defendant was not choked. He was asked several times if he had swallowed the package and it was known by the manner of his answering that he had not; further the officers could see a part of the package in his mouth from time to time. Defendant was asked repeatedly to spit out the package and was told that if the package were to stick in his throat it undoubtedly would kill him. One of the officers reached with a finger for the package and the defendant admittedly bit him. The officers were apparently involved at one and the same time with attempting to handcuff the defendant and avoiding being struck and kicked by him. The defendant fiercely resisted and used great force to avoid being taken into custody.

The entire struggle consumed very few minutes in time. When the handcuffs were applied "he spit it out and said, 'There it is, that's all there is.'"

The defendant took the witness stand and denied that he had any heroin in his possession, denied that he ever had any package in his mouth or ever spit out such a container. He did admit, however, to having a "narcotic outfit," a hypodermic needle, a funnel and a quarter spoon (all items which are employed either in the use of narcotics, or as paraphernalia in the sale and packaging of narcotics). He further admitted in his testimony that he was convicted in the federal court in 1944 of narcotic violations, that he was convicted in 1949 in Los Angeles County of possession of heroin, and that he was convicted in 1956 in Los Angeles County of possession of heroin.

The appellant now asserts that the evidence was obtained in violation of due process and that the evidence was obtained as

the result of an illegal search and seizure—that there was insufficient cause for his arrest.

The trial judge made a finding that there was no brutal treatment of the defendant by the officers and that the force used by the police was not shocking or unreasonable under the circumstances. Appellant relies heavily upon *Rochin* v. *California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R. 2d 1396], and the cases cited therein and those which follow it. However a reading of the cases mentioned and the facts in this case demonstrate that there is little if any similarity in the fact situations.

Not every display of force or trespass to the person is unreasonable. (*People* v. *Woods*, 139 Cal.App.2d 515 [293 P.2d 901] ; *People* v. *Haeussler*, 41 Cal.2d 252, 259 [260 P.2d 8] ; *Breithaupt* v. *Abram*, 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed. 2d 448] ; *People* v. *Duroncelay*, 48 Cal.2d 766 [312 P.2d 690] ; *Blackford* v. *United States*, 247 F.2d 745; *Barrera* v. *United States*, 276 F.2d 654.)

Lack of consent and physical resistance by the suspect or accused are not enough in and of themselves to create or constitute illegality. (*Vasquez* v. *Superior Court*, 199 Cal. App.2d 61 [18 Cal.Rptr. 140].)

The fact alone that there was a struggle between the accused and the officers does not require a holding that the officers used unreasonable force under the circumstances. (*People* v. *Sanchez*, 189 Cal.App.2d 720, 726-728 [11 Cal.Rptr. 407].)

In this case the court was entitled to believe that there was no choking of the defendant. (*People* v. *Smith*, 50 Cal.2d 149, 150-151 [323 P.2d 435] ; *People* v. *Kiss*, 125 Cal.App.2d 138, 141-142 [269 P.2d 924].)

In *Vasquez* v. *Superior Court*, 199 Cal.App.2d 61, 66 [18 Cal.Rptr. 140] it is aptly stated:

"It remains true, however, that each case of this kind is a fact case. The correct decision of each depends not so much upon a higher critical examination of the accumulated decisional gloss as upon a common-sense determination of whether, within the meaning the Constitution uses, the particular search and seizure has been unreasonable, that is, whether what was done and found bears a reasonable relation to the authority then possessed and exercised or transcends it to become oppression. (*In re Ginsburg*, 147 F.2d 749, 750.) Each case is to be decided on its own facts and circumstances. (*Harris* v. *United States*, 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399, at 1405].)"

Here the officers saw the defendant make furtive motions, then he made a quick effort to swallow the evidence, the officers reached for his arm to stop him. The defendant had no constitutional right to swallow or destroy the evidence of his crime. (*People* v. *Brinson,* 191 Cal.App.2d 253, 256 [12 Cal.Rptr. 625]. See also *Espinoza* v. *United States,* 278 F.2d 802.)

Paraphrasing what was said in *United States* v. *Mont,* 306 F.2d 412, 414, one of the officers in his effort to retrieve the contraband got his finger near the defendant's mouth ''. . . whereupon . . . [defendant] took the maxillary action not unnatural under the circumstances and lacerated . . . [the officer's finger.]''

It is apparent in this case that had the defendant delivered over the heroin with which he was caught in the first instance there would have been no struggle. He saw fit, however, to attempt to destroy the evidence, to bite, strike, kick and wrestle with the officers in an attempt to avoid being taken into custody with the heroin as evidence. The defendant resisted to the utmost and it would appear that he was of considerable strength and force, for it took two policemen to hold him, thereby avoiding a fight, and to subdue him to the end that they could effectuate the arrest.

 The police should not be required to be subjected to beatings by arrestees any more than arrestees should be subjected to beatings by the police. There is no credible evidence that the police exercised any disproportionate force upon the defendant. As Justice Cardozo said in *Snyder* v. *Massachusetts,* 291 U.S. 97, 122 [54 S.Ct. 330, 338, 78 L.Ed. 674, 687, 90 A.L.R. 575], ''But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.''

 With reference to appellant's next major contention, namely, that there was no probable cause for the officers to make an arrest, we find no merit to the assertion. The officers went to defendant's abode to question him about his narcotics activities and about what they had heard. When the defendant was in the hallway he made furtive movements and at once reached for the package which was in his shirt and started to make the motions which finally concluded with his placing what the officers thought was heroin into his mouth. Knowing what they knew there was probable cause to believe that defendant was then and there in the commission of a felony

and they started to and did thereupon arrest him. The subterfuge to get the defendant out of his room into the hallway was not an unpermissible fraud under the circumstances. (*People* v. *Albert,* 182 Cal.App.2d 729, 737 [6 Cal.Rptr. 473].)

There is no contention that the evidence, if once properly admitted, was insufficient to sustain the conviction.

The appeal from the order denying the motion for a new trial is dismissed. (*People* v. *Eppers,* 205 Cal.App.2d 727, 728 [23 Cal.Rptr. 222].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 4, 1963, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1963.