STATE OF NEBRASKA, APPELLEE, v. TIMOTHY RAY McELROY, APPELLANT.

202 N. W. 2d 752

Filed December 8, 1972. No. 38521.

Shrout, Lindquist, Caporale, Brodkey & Nestle, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

Defendant was convicted of unlawful possession of

cocaine. On appeal he contends (1) no probable cause existed for the warrantless arrest of defendant, (2) seizure of the cocaine in a warrantless search of defendant at the station house subjected the evidence to the exclusionary rules, and (3) conviction without proof of possession of a quantity with a potential for abuse entitled defendant to a new trial.

On October 7, 1971, David Jansa, a police officer, through binoculars observed the driver of a van in a parking space of a drive-in light a pipe. A flame of 4 inches arose. It indicated marijuana or hashish to Jansa, whose training and experience in such investigations were wide.

Ten minutes after the observation the van proceeded to a point where Jansa stopped it. Defendant, the operator, stepped out and walked back to meet Jansa. While defendant was producing his operator's license, Jansa at a distance of 3 feet smelled "suspected" marjuana which emitted a weedy odor. The two men then walked to the van for Jansa ostensibly to examine the vehicle registration. There Jansa, looking over defendant's shoulder, smelled a marijuana odor that was emanating from the van. He saw a passenger who was smoking a cigarette, a paper bag on the floor, and a pipe between the driver's and passenger's seats. The pipe with a cover of cellophane outside and inside the bowl was smoldering. Having seized the pipe and looked inside the bowl, Jansa arrested both men. The vehicle registration was not checked. In a search at the scene a small bag thought to contain marijuana was found in the overcoat pocket of defendant.

At the police station defendant disrobed on orders of Jansa. In the search Jansa removed from defendant's wallet this item: A folded opaque newspaper, $1\frac{1}{2}$ by 2 inches, that enclosed a minute quantity of cocaine hydrocloride, container and contents together weighing only 5 milligrams. Defendant said he had possessed the substance for a long time and "a guy has got to

make a living." The substance was consumed in the chemical tests for cocaine.

An incident search may not precede an arrest and serve as part of its justification. Sibron v. New York, 392 U. S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). In evaluation of the reasonableness of a search or seizure without warrant it is imperative that the facts be judged against an objective standard. Would the facts available to the officer at the moment of the search or the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate? Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

When an officer makes an arrest, it is reasonable for him to search the person arrested and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. That justification is absent where a search is remote from the arrest. See Chimel v. California, 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). Wherever an individual may harbor a reasonable expectation of privacy he ought to be free from unreasonable governmental intrusion. Terry v. Ohio, supra. The constitutional validity of a warrantless search can only be decided in the concrete factual context of the individual case. Sibron v. New York, supra.

Probable cause existed for the conduct of Jansa at the scene, and the search and seizure at the station were not remote. The latter furthermore served to protect defendant and others from use of dangerous drugs, such as lysergic acid diethylamide, at the station. The district court correctly denied defendant the benefit of the exclusionary rules.

The Uniform Controlled Substances Act, which governed, does not expressly define the offense of unlawful possession of cocaine in terms of quantity with a potential for abuse. See § 28-4,125(3), R. S. Supp., 1972. Some courts have so interpolated the act or a

similar statute, but others have not. Watson v. Nevada (Nev., 1972), 495 P. 2d 365.

The argument in favor of the requirement is well stated by counsel for defendant: "It is inconceivable that 5 mg. of cocaine, even unadulterated, might have any potential for abuse . . . . To assume that 5 mg. of cocaine (100% pure) can produce any effects on an individual is an assumption not sustained by scientific literature. Sollman, A Manual of Pharmacology, 8th Ed., (1957), p. 334; Whealy, Drugs and the Criminal Law, 12 Crim. L.Q. 254 (1970); Eldridge, Narcotics and the Law (1962), pp. 1-34."

A relatively minor problem with the rule urged by defendant might be the overburdening of qualified chemists and laboratories. See ALI-ABA, Course of Study on Defense of Drug Cases (1971), Segal, "Defense in Possession and Sale Cases," 272 at 276. More important, the statutory provision does not specify a quantity with a potential for abuse. On balance the following rule is adopted: In the absence of a legislative declaration to the contrary, a quantity with a potential for abuse is not an essential element of the offense of unlawful possession of a controlled substance. Possession of course must be knowing and intentional.

Defendant was not entitled to a new trial.

AFFIRMED.

McCOWN, J., dissenting.

The total weight of the "controlled substance" involved here, including the 1½ by 2 inch piece of newspaper in which it was folded was only 5 milligrams. In terms of ordinary American usage, that is less than 2/10,000's of an ounce. The laboratory technician did not know how much of that infinitesimal weight was the piece of newspaper. The substance was washed out of the newspaper before testing and the newspaper was discarded. The tests did not ascertain the percentage of cocaine. There was no test as to purity. There was no test as to whether the substance was active or inactive

biologically or physiologically. The substance was entirely used up in the tests to determine what it was.

The Uniform Controlled Substances Act makes possession of a controlled substance a crime unless the possession is authorized by the act. The Legislature did not establish any minimum amounts of a controlled substance, possession of which is requisite for a criminal conviction.

Under similar statutes, some courts, and now this court, have interpreted the language to ban the possession of even the most minute traces of any narcotic or controlled substance. Other courts have held to the contrary. We believe the better rule to be that possession of a minute quantity of a controlled substance, useless as a drug, is insufficient to sustain a conviction for knowing possession of a controlled substance. See, People v. Leal, 50 Cal. Rptr. 777, 413 P. 2d 665 (1966); Watson v. State (Nev., 1972), 495 P. 2d 365; State v. Haddock, 101 Ariz. 240, 418 P. 2d 577 (1966).

The substance used as the basis for prosecution ought to be of such a quantity and quality as to be susceptible of use as a drug. The intent necessary to establish the crime of possession simply does not exist when the amount is so minute as to be incapable of being applied to any use, even though chemical analysis may identify a trace of a prohibited drug.

BOSLAUGH and CLINTON, JJ., join in this dissent.