[No. E008136. Fourth Dist., Div. Two. Oct. 22, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL HENRY FULKMAN, Defendant and Appellant.

556

**COUNSEL**

Joseph A. Howell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—Defendant has appealed from a judgment of conviction entered following a guilty plea to one count of unlawfully possessing heroin for sale (Health & Saf. Code, § 11351). On appeal, defendant contends that the magistrate improperly denied his Penal Code section 1538.5 motion to suppress certain evidence, because, he argues: (1) the magistrate failed to make an explicit finding that there was no choking or choke hold applied by the officers in removing a wad of heroin from defendant's mouth; (2) the magistrate's implied finding that there was no choking or choke hold applied by the officers was not supported by substantial evidence; and, (3) even if the officers did not apply a choke hold or choke defendant during the extraction of the wad of masking tape, the evidence must be suppressed because the officers' conduct "shocks the conscience" and thereby offends due process.

We have determined, however, that the magistrate impliedly found that there was no choke hold or choking applied by the officers, that the finding was supported by substantial evidence and that the officers' conduct was reasonable under the circumstances. Therefore, we shall affirm.

### FACTS

In January 1988, Riverside police officers arrived at a residence to execute a search warrant on the residence and the defendant. Defendant, whose legs had been amputated, was discovered seated in a wheelchair on the back patio of the residence.

Apparently, defendant was observed placing a "2-inch wad" of masking tape into his mouth.[1] During the ensuing struggle with Detective Meier and Officer Crawford to retrieve the wad of masking tape, defendant's wheelchair fell over, and defendant fell from the chair onto the cement. As defendant struggled to keep his mouth closed and the wad of masking tape in his mouth, he was breathing very heavily through his nose, like "someone . . . exerting a large amount of energy."

---

[1]Hereafter "the wad," "the wad of masking tape," or "the evidence," as appropriate.

To prevent defendant from swallowing the wad of masking tape, Detective Meier applied pressure to defendant's chin and throat with his hand, placing two or three fingers on either side of defendant's neck. When Officer Palm arrived 30 seconds after Detective Meier and Officer Crawford, he saw defendant on the ground on his back in a semiprone position, with Detective Meier's hand on defendant's chin, placing pressure on defendant's neck so he wouldn't swallow "the wad." However, according to Officer Delarosa's testimony, "there was no hold around [defendant's] neck."

Officer Delarosa testified that when he first saw defendant, he observed "a couple of other detectives that were attempting to get [defendant] to spit something out." Officer Delarosa heard the officers shout at defendant at least three or four times to "spit out what was in his mouth." When Officer Delarosa saw that defendant still refused to comply, he assisted the other officers by inserting the capped end of his Bic pen into the corner of defendant's mouth, using a sweeping motion to pry the object out of his mouth.

Officer Delarosa retrieved the wad of masking tape, which contained 16 balloons filled with 3.4 grams of heroin. "The wad" was described as being about two inches in diameter or a little bigger than a golf ball. Defendant testified that he was trying to swallow the "2-inch wad" and that it was partially down his throat before the officers retrieved it.

In defendant's bedroom, the officers also located a billy club and drug paraphernalia, including syringes and a "cooking spoon."

In an information defendant was charged in count I with possession of heroin for sale, a felony (Health & Saf. Code, § 11351), in count II with possession of a billy club, a felony (Pen. Code, § 12020, subd. (a)), and in count III with unlawful possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364). Defendant pled not guilty.

At the preliminary hearing, defendant's Penal Code section 1538.5 motion to suppress certain evidence was denied. Defendant's renewed section 1538.5 motion was heard in superior court, and again it was denied.

Defendant then withdrew his plea of not guilty and entered a plea of guilty to count I. Counts II and III were dismissed pursuant to the plea agreement. Defendant was granted probation and ordered to serve two days in jail with two days' credit for time already served. This appeal followed.

Additional facts relevant to the issues raised in this appeal are set forth, as necessary, in the discussion which follows.

### DISCUSSION

In claiming that the court improperly denied his Penal Code, section 1538.5, motion to suppress certain evidence, defendant makes several procedural, substantial evidence and due process arguments. We shall consider, seriatim, each argument.

■ Initially, defendant argues that the superior court incorrectly based its decision on an implicit rather than an explicit finding by the magistrate that there was no choke hold or choking by the officers in removing the wad of masking tape from defendant's mouth. Defendant urges that the magistrate was required to make an express finding on the issue of whether the officers had applied a choke hold or had choked him during the search, citing *People* v. *Jones* (1989) 209 Cal.App.3d 725 [257 Cal.Rptr. 500] and *People* v. *Cappellia* (1989) 208 Cal.App.3d 1331 [256 Cal.Rptr. 695], in support of this argument.

■ Pursuant to Penal Code section 1538.5, subdivision (i), the findings of the magistrate are binding on the superior court when a suppression motion has already been brought at the preliminary hearing. The superior court is the reviewing court and not the factfinding court under the statute. (*People* v. *Ramsey* (1988) 203 Cal.App.3d 671, 678-679 [250 Cal.Rptr. 309].) As a result, the appellate court disregards the findings of the superior court and "reviews the determination of the magistrate who ruled on the motion to suppress. [Citation.]" (*Id.*, at p. 679.)

In reviewing the magistrate's findings, all presumptions are drawn in favor of the magistrate, whose express or implied findings must be upheld if supported by substantial evidence. (203 Cal.App.3d at p. 679.) Further, "[w]here there are no express findings of fact, it is implied that the trial court (municipal or superior) made whatever findings were necessary to support the judgment or order. [Citations.]" (*Winton* v. *Municipal Court* (1975) 48 Cal.App.3d 228, 236 [121 Cal.Rptr. 561].)

■ Here the magistrate concluded that the officers' actions were reasonable under the circumstances. In making her determination, the magistrate stated: "The force [the officers] use[d] is what I consider very fair in light of the fact that he is the one gritting his teeth. He is the one swallowing. He is the one resisting. They use a hand to try to open his mouth. He doesn't open it. They use a pen to try to pry it, if you believe [defendant's] evidence[,] because he won't open his mouth. He is totally in control of the situation. Assume his evidence is true, that they hit him on the back. Hitting him on the back, as he says, in an attempt to get him to eject the stuff out of his mouth is perfectly, to me, within the scope . . . . I think they had every

right to do what they did for [defendant's] own personal safety, and for that reason, I'll deny the motion." Implicit in the magistrate's conclusion was a finding that there was no choking or choke hold applied to defendant's neck.

We also note, contrary to defendant's assertion, that neither *People v. Jones, supra*, 209 Cal.App.3d 725, nor *People v. Cappellia, supra*, 208 Cal.App.3d 1331, holds that the magistrate is required to make an express finding of whether the officers applied a choke hold or choked defendant during the search. (See *People v. Jones, supra*, 209 Cal.App.3d at pp. 730-731; *People v. Cappellia, supra*, 208 Cal.App.3d at pp. 1338-1339.)

■ Defendant next argues that the evidence was insufficient to support the magistrate's implicit finding that there was no choking or choke hold applied by the officers. We disagree.

Whether choking or a choke hold occurred is a question of fact for the magistrate to resolve and must be upheld if supported by substantial evidence. (*People v. Jones, supra*, 209 Cal.App.3d at pp. 730-731; *People v. Johnson* (1991) 231 Cal.App.3d 1, 16 [282 Cal.Rptr. 114].) Here, as stated, the implied finding was of no choking or choke hold, and the evidence, viewed favorably to the finding, supports it.

Officer Delarosa testified that "[n]obody had a choke hold" on defendant. When asked, "And somebody's got an arm around his neck; correct?" Delarosa answered, "I don't recall either one of [the officers] having a choke hold like you're describing."

Officer Palm testified: "My recollection of that is there was no hold around his neck. Detective Meier had his hand, one of his hands on what appeared to me to be his chin, placing a pressure on his neck so he couldn't swallow the object that was in his mouth. [¶] But I don't recall anybody having their arm around [defendant's] neck." Officer Palm also testified: "My recollection was it was partially on the jaw and then down—these two outside fingers were down on the neck on the side." According to Officer Palm, pressure was being applied "by where the Adam's apple was." Detective Meier was applying pressure with just one hand, using two or three fingers "to pry defendant's mouth open" with "the fingers on the neck to keep him from swallowing." Defendant wasn't gasping for air, "he was breathing heavily through his nose . . . ."

Thus, there was substantial evidence from which the magistrate could conclude that neither a choke hold nor choking occurred during the officers' efforts to get the wad of masking tape out of defendant's mouth.

█ We next turn to a consideration of whether, in our independent judgment, the force used was constitutionally reasonable. (See *Winston* v. *Lee* (1985) 470 U.S. 753, 761-762 [84 L.Ed.2d 662, 669-670, 105 S.Ct. 1611]; *People* v. *Ramsey, supra*, 203 Cal.App.3d at p. 679.) For the reasons stated, we hold that it was.

█ As recognized in *Winston* v. *Lee, supra*, 470 U.S. 753, the Fourth Amendment neither forbids nor permits all involuntary police intrusions into the human body. (*Id.*, at p. 760 [84 L.Ed.2d at p. 668]; *Schmerber* v. *California* (1966) 384 U.S. 757, 768 [16 L.Ed.2d 908, 918, 86 S.Ct. 1826].) "[R]ather, the Amendment's 'proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.' [Citation.]" (*Winston* v. *Lee, supra*, 470 U.S. at p. 760 [84 L.Ed.2d at p. 669].) Although courts have reviewed police officers' conduct in these situations under the "shock the conscience" standard formulated by *Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396], "modern [United States] Supreme Court decisions are grounded on whether the search was 'reasonable' under the circumstances. [Citations.]" (*People* v. *Cappellia, supra*, 208 Cal.App.3d at pp. 1337-1338; *Winston* v. *Lee, supra*, 470 U.S. at pp. 760-763 [84 L.Ed.2d at p. 668-671]; *Schmerber* v. *California, supra*, 384 U.S. at pp. 768, 771 [16 L.Ed.2d at pp. 918-919].)

In order to prevent the destruction of evidence, the police may "reach into a person's mouth to recover evidence if there is sufficient probable cause to believe a crime is being, or has been, committed. [Citation.]" (*People* v. *Cappellia, supra*, 208 Cal.App.3d at p. 1336; *People* v. *Johnson, supra*, 231 Cal.App.3d at p. 15.) Notably, "[t]he mouth is not a 'sacred orifice' and 'there is no constitutional right to destroy or dispose of evidence . . . .' (*People* v. *Bracamonte* (1975) 15 Cal.3d 394, 405, fn. 6 [124 Cal.Rptr. 528, 540 P.2d 624].)" (*People* v. *Cappellia, supra*, 208 Cal.App.3d at p. 1336; see *United States* v. *Caldera* (9th Cir. 1970) 421 F.2d 152.) At the same time, police officers may not "use brutal or excessive force to recover evidence. [Citation.]" (*People* v. *Cappellia, supra*, 208 Cal.App.3d at p. 1336; *People* v. *Bracamonte* (1975) 15 Cal.3d 394, 405, fn. 6 [124 Cal.Rptr. 528, 560 P.2d 624].) Rather, they "must act reasonably and use only that degree of force which is necessary to overcome defendant's resistance . . . ." (*Carleton* v. *Superior Court* (1985) 170 Cal.App.3d 1182, 1187 [216 Cal.Rptr. 890].)[2]

---

[2]See *United States* v. *Harrison* (D.C. Cir. 1970) 432 F.2d 1328 [139 App.D.C. 266] and *Espinoza* v. *United States* (5th Cir. 1960) 278 F.2d 802. In *Harrison*, officers executing a search warrant observed defendant in the act of swallowing an envelope. The officers grabbed Harrison by the throat and prevented him from swallowing. The envelope contained 10 heroin capsules. The *Harrison* court determined there was no *Rochin* problem, i.e. that the officers'

In deciding whether the challenged conduct was reasonable, the reviewing court considers: "(1) whether there was probable cause to conduct the search, (2) whether the procedure used 'may threaten the safety or health of the person,' and (3) whether the search would damage the individual's sense of 'personal privacy and bodily integrity.' (*Winston* v. *Lee, supra*, 470 U.S. at pp. 760-762 . . .)" (*People* v. *Cappellia, supra*, 208 Cal.App.3d at p. 1338.) Against these individual interests, the court must weigh "the community's interest in fairly and accurately determining guilt or innocence." (*Winston* v. *Lee, supra*, 470 U.S. at p. 762 [84 L.Ed.2d at p. 670].)

 Applying the *Winston* test to the facts of this case, we have determined that the officers' actions in removing the wad of masking tape containing contraband from defendant's mouth were reasonable. Here the officers had probable cause to conduct the search. They had a search warrant, the scope of which included a search of defendant's person. Further, according to Officer Delarosa's testimony, as Delarosa ran around the corner of the residence he saw defendant on the ground surrounded by three officers. A couple of them were shouting at defendant to "spit something out" of his mouth. Officer Delarosa heard them shout the same command at least three or four times. Defendant refused to comply, keeping his mouth tightly closed. Based on these circumstances, it was reasonable for Officer Delarosa to conclude that defendant had contraband in his mouth and to assist the other officers in their efforts to dislodge the object from defendant's mouth.

Secondly, we note that "a search of the mouth does not damage a person's sense of personal privacy and security. Just as a blood test is a routine part of ordinary life [citation], so is an oral examination." (*People* v. *Cappellia, supra*, 208 Cal.App.3d at p. 1338.)[3] The critical question then becomes "whether the procedure used by the police threatened defendant's health or safety." (*Ibid.*) We conclude it did not.

actions did not "shock the conscience," and that the officers' actions were reasonable under the circumstances to prevent destruction of evidence, citing *Schmerber* v. *California, supra*, 384 U.S. 757. (*United States* v. *Harrison, supra*, 432 F.2d at p. 1330.)

In *Espinoza*, the officers observed defendant place a small package in his mouth. To prevent destruction of what appeared to be, and was in fact, narcotics, the officers grabbed defendant about the throat, choked him and attempted to pry open his mouth by use of pressure against his jaw and nose. The *Espinoza* court concluded that the officers used no more force than was reasonable and necessary under the circumstances. (*Espinoza* v. *United States, supra*, 278 F.2d at p. 804.)

[3]Compare *Rochin* v. *California, supra*, 342 U.S. 165 (forcible pumping of defendant's stomach with emetic solution to recover evidence unreasonable); *People* v. *Scott* (1978) 21 Cal.3d 284 [145 Cal.Rptr. 876, 578 P.2d 123] (physician administered prostate massage, through rectum, to obtain sperm sample unreasonable); *People* v. *Bracamonte, supra*, 15 Cal.3d 394 (emetic administered through nasal tube to recover evidence unreasonable); *United States* v. *Cameron* (9th Cir. 1976) 538 F.2d 254 (probe of rectal cavity and administration of enema to recover evidence unreasonable).

The " 'application of force to a person's throat[,]' " as well as, perhaps, attempts to pry objects from his or her mouth, " 'is a dangerous and sensitive activity' " and " 'is the type of force that, more than any other, is likely to result in violent resistance' [citation] . . . ." (*People* v. *Cappellia, supra,* 208 Cal.App.3d at p. 1338.) At the same time, "the application of such force is not . . . per se unreasonable, excessive, or a threat to a defendant's health or safety." (*Ibid.*) As noted in *People* v. *Cappellia,* " 'it makes little sense to say that the minimal pressure necessary to prevent swallowing is excessive, particularly when it is considered that if the drugs are swallowed the defendant may be harmed by them and may have to submit to an even more disagreeable procedure for his own protection or for retrieval of the evidence.' [Citation.]" (*Ibid.*)

Here, as stated *ante,* the magistrate impliedly found there was no choke hold or choking of defendant. In addition, the magistrate specifically noted that there was no evidence of any physical injuries requiring defendant's hospitalization or medical treatment, that hitting defendant on the back to eject the evidence out of his mouth was reasonable, and that the officers had a right to do what they did for defendant's personal safety.

Further, defendant testified that the "2-inch wad" of masking tape was partially down his throat before the officer was able to dislodge it. Thus, defendant admittedly was attempting to swallow a very large object that contained heroin and there was a very real danger that the object would become lodged in his throat, as well as potentially being harmful if swallowed. As a result, the officer's actions, i.e., the application of pressure to defendant's neck to prevent him from swallowing the wad of masking tape and the use of a pen to pry "the wad" from defendant's mouth, were both minimally intrusive and reasonably necessary.

Based on the foregoing facts and analysis, we conclude that the magistrate properly denied defendant's Penal Code section 1538.5 motion to suppress certain evidence.

## DISPOSITION

The judgment is affirmed.

McKinster, J., and McDaniel, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied February 11, 1992. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.