STATE OF NEBRASKA, APPELLEE, V. LAMONT L. THOMPSON,
APPELLANT.

505 N.W.2d 673

Filed September 17, 1993.    No. S-92-928.

190

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and David Arterburn for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

After refusing to suppress certain evidence, the trial court, then sitting as the trier of fact, adjudged the defendant, LaMont L. Thompson, guilty of the Class IV felony offense of possessing cocaine, in violation of Neb. Rev. Stat. §§ 28-405(a)(4) [Schedule II] (Reissue 1989) and 28-416(3) (Cum. Supp. 1992). Thompson asserts the trial court erred in (1) overruling his suppression motion and (2) finding the evidence sufficient to support the charge. We affirm.

## II. FACTS

While in a marked cruiser at approximately 10 p.m. on February 5, 1992, two Omaha police officers, Vincent Perez and John Sears, observed Thompson standing in the parking lot of a liquor store located in the highest drug trafficking area in the city. Upon seeing the cruiser, Thompson quickly ran into the liquor store. Perez recognized Thompson as the result of some 30 to 40 previous contacts and knew from prior reports that Thompson was a street-level drug dealer who carried crack cocaine in his mouth. Perez also saw Thompson and another party with their hands extended out toward each other,

exchanging something. As the officers approached, Thompson hurried away and made a motion to his mouth with his hand.

While Sears attended to the other party, Perez ordered Thompson to open his mouth. As Thompson refused to comply, Perez shined his flashlight on Thompson's face and saw around Thompson's lips white crumbs, which Perez suspected to be crack cocaine. Perez once more ordered Thompson to open his mouth, and Thompson again refused. Perez then ordered Thompson to place his hands behind his back so that he might be secured, whereupon Thompson began swinging his hands and clawing at the officer to avoid being handcuffed.

Perez next placed Thompson in a "lateral vascular neck restraint," as the consequence of which Thompson became unconscious, thereby permitting Perez to handcuff him. Other than Thompson's characterization of the restraint as a choking maneuver, the record does not describe the restraint.

In any event, Sears joined Perez and Thompson and pulled crack-cocaine-like substances off Thompson's lips and from around his teeth. About 10 seconds later, Thompson regained consciousness, and Perez placed him in the cruiser and proceeded to the police station, where Perez swabbed Thompson's hands and had him chew on a sterile gauze.

Laboratory tests established the substances taken from and around Thompson's mouth to be cocaine, and Thompson's hands revealed the presence of cocaine. According to Perez, the substances removed from Thompson's lips were between the size of a pinhead and a pea.

### III. ANALYSIS

With those facts in mind, we turn our attention to Thompson's two assignments of error.

#### 1. SUPPRESSION MOTION

In connection with his first assignment of error, Thompson argues that the evidence concerning the nature of the substances taken from and around his mouth should have been suppressed because the search was accomplished through the use of excessive force, rendering the search constitutionally unreasonable. He raises no issues concerning the propriety of

the officers' approaching or arresting him.

### (a) Scope of Review

We begin our consideration of this assignment of error by noting that at a hearing to suppress evidence, the trial court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. Moreover, in reviewing a trial court's ruling on suppression of evidence, an appellate court does not reweigh or resolve conflicts in the evidence, but will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Martin*, 243 Neb. 368, 500 N.W.2d 512 (1993); *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989); *State v. Marco*, 230 Neb. 355, 432 N.W.2d 1 (1988). In deciding whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court takes into consideration that the trial court has observed the witnesses testifying regarding such motion. *State v. Martin, supra*; *State v. Ellington*, 242 Neb. 554, 495 N.W.2d 915 (1993); *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

### (b) Nature of Search

We note first of all that it is not at all clear that Perez employed the restraint at issue in order to effect a search; his testimony was that he used the restraint to control Thompson. However, for the purposes of our analysis, we assume, as Thompson has done, that the restraint was applied to effect the search.

The two most prominent decisions on the subject of intrusive searches are *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952), and *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

*Rochin*, the only case cited by Thompson, was decided before *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), made the right of privacy guaranteed by the 4th Amendment applicable to the states through the Due Process Clause of the 14th Amendment. *Rochin* was therefore grounded on due process principles. Therein, police officers, acting upon a tip that Rochin was dealing in drugs, illegally entered his home without a warrant. The officers forced their

way into the defendant's bedroom and observed two capsules on a nightstand beside Rochin's bed. When asked about the capsules, Rochin grabbed and placed them in his mouth. The officers grappled with Rochin and unsuccessfully tried to retrieve the capsules. Rochin was then handcuffed and taken to a hospital, where, at the direction of one of the officers, a doctor forced him to ingest an emetic solution which caused him to vomit the capsules. The U.S. Supreme Court described the officers' conduct as "brutal" and "shock[ing] the conscience" and held that the method of retrieving the evidence was "too close to the rack and the screw" not to have violated due process of law. 342 U.S. at 172-74.

In *Schmerber*, police arrested the defendant at a hospital where he had been taken for treatment after an automobile accident. While at the hospital, the officer ordered a blood sample be taken from the defendant without his consent and without a warrant. The blood sample revealed the defendant was intoxicated, and the results were admitted at trial. In approving this procedure, the *Schmerber* Court remarked that the officers acted in accordance with an accepted medical procedure and that the operation was performed in a reasonable manner without trauma or pain. Noting that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances or which are made in an improper manner," 384 U.S. at 768, the Court emphasized that a blood test was routine and that taking blood must be contrasted sharply with the practice in *Rochin*. Moreover, the Court found an "emergency" situation to exist because of the highly evanescent nature of the evidence. 384 U.S. at 770. The *Schmerber* Court set forth several criteria to be considered in determining the reasonableness of an intrusive search: (1) whether the government had a clear indication that incriminating evidence would be found; (2) whether the police had a warrant or there existed exigent circumstances, such as the imminent destruction of evidence, to excuse the warrant requirement; and (3) whether the method used to extract the evidence was reasonable and performed in a reasonable manner.

Several jurisdictions have examined the means used by police to extract evidence from a suspect's mouth. Although repeatedly affirming the reasonable use of force to retrieve evidence of a crime which has been secreted in the mouth, jurisdictions vary as to the amount of force which can be used. See, *United States v. Harrison*, 432 F.2d 1328 (D.C. Cir. 1970); *United States v. Caldera*, 421 F.2d 152 (9th Cir. 1970); *State v. Desmond*, 593 So. 2d 965 (La. App. 1992); *People v. Matherine*, 166 A.D.2d 322, 560 N.Y.S.2d 1018 (1990), *appeal denied* 76 N.Y.2d 1022, 566 N.E.2d 1178, 565 N.Y.S.2d 773.

Various federal courts have admitted evidence taken from a defendant's mouth where police officers have applied a choke hold or grabbed the defendant's throat. In *Harrison*, officers entered the defendant's dwelling in execution of a search warrant and witnessed the defendant swallowing an envelope containing heroin capsules. One of the officers grabbed the defendant's throat to prevent him from swallowing the envelope. Finding that the existence of a valid warrant distinguished the situation before it from *Rochin v. California, supra*, the *Harrison* court held the conduct to have been reasonable and necessary to prevent the destruction of evidence and ruled the grabbing of the defendant's throat not to constitute undue force or brutality. *Espinoza v. United States*, 278 F.2d 802 (5th Cir. 1960), *cert. denied* 364 U.S. 827, 81 S. Ct. 65, 5 L. Ed. 2d 55, also ruled the choking of the defendant and the placing of pressure against his nose and jaw to pry open his mouth and prevent him from swallowing evidence to be reasonably necessary to retrieve the articles the defendant attempted to swallow and not to be excessive force.

A number of states have followed suit. See, *State v. Lewis*, 115 Ariz. 530, 566 P.2d 678 (1977) (choke hold used by police officer to prevent accused from swallowing balloon of heroin while another officer slapped accused in the back to get her to open her mouth was not so excessive as to deny due process); *State v. Santos*, 101 N.J. Super. 98, 102, 243 A.2d 274, 276 (1968) (choking defendant's accomplice to prevent swallowing of narcotics did not prevent their admission into evidence. "The police have a right short of outright brutality of a shocking nature to apply such reasonable force to a suspect as is fairly

necessary to prevent an imminent destruction of evidence of the commission of crime"); *Johnson v. State*, 397 S.W.2d 441 (Tex. Crim. App. 1965) (officer's use of both hands to choke defendant to prevent him from swallowing marijuana cigarette did not affect its admissibility in prosecution for possession); *Donley v. State*, 435 S.W.2d 518 (Tex. Crim. App. 1969) (stranglehold on defendant, forcing him to spit out heroin, was not an unreasonable search and seizure); *Hernandez v. State*, 548 S.W.2d 904 (Tex. Crim. App. 1977) (action of the police officers in wrestling defendant to the ground while one officer held defendant's arm and the other choked defendant did not shock the conscience, and evidence obtained from search was admissible); *People v. Johnson*, 78 Ill. App. 2d 398, 223 N.E.2d 321 (1966), *cause remanded by* 38 Ill. 2d 399, 231 N.E.2d 447 (1967) (force reasonable where officers throttled defendant to force him to cough up heroin); *State v. Victor*, 76 Ohio App. 3d 372, 601 N.E.2d 648 (1991), *cert. denied* ____ U.S. ____, 113 S. Ct. 292, 121 L. Ed. 2d 217 (1992) (choking defendant with a hand thrust to neck was not excessive force, since search was accomplished quickly and defendant opened his mouth as soon as pressure was applied to his throat, remained standing throughout the search, and did not appear to be injured as a result of the contact).

However, the courts of California have held that choking or using a choke hold to make a defendant spit out evidence secreted in his or her mouth constitutes excessive force. *People v. Cappellia*, 208 Cal. App. 3d 1331, 256 Cal. Rptr. 695 (1989). See *People v. Sanders*, 268 Cal. App. 2d 802, 74 Cal. Rptr. 350 (1969) (evidence recovered from mouth of suspect not admissible where officer applied judo hold designed to stop the flow of blood to defendant's head). But in *Carleton v. Superior Court (People)*, 170 Cal. App. 3d 1182, 216 Cal. Rptr. 890 (1985), the court found the use of a carotid restraint not excessive where the defendant was resistive and aggressive. The defendant was charged with driving under the influence of alcohol. After his arrest, he was asked to provide a sample of blood, breath, or urine so that his blood alcohol level could be determined. The defendant aggressively resisted the test, and police applied a carotid restraint for 4 or 5 seconds, during

which the defendant became limp.

Where police place their hands on a defendant's throat or neck but do not choke the defendant, California has held the force applied in making the search is not excessive. " 'The mouth is not a "sacred orifice" and "there is no constitutional right to destroy or dispose of evidence. . . ." . . .' " *People v. Johnson*, 231 Cal. App. 3d 1, 15, 282 Cal. Rptr. 114, 122 (1991) (officer's testimony that he had defendant in control hold from behind, the crook of his arm placed in front of defendant's neck to avoid choking, while second officer used one or both of his hands at defendant's jaw or lower face in attempt to retrieve cocaine from his mouth supported trial court's finding that officers did not choke defendant to get cocaine from his mouth and, thus, that excessive force was not used). See, *People v. Fulkman*, 235 Cal. App. 3d 555, 286 Cal. Rptr. 728 (1991) (force applied by officers to retrieve balloons of heroin, which force consisted of pounding defendant on back, placing pressure on Adam's apple to prevent him from swallowing, and prying contraband out of defendant's mouth with pen, was not unreasonable); *People v. Cappellia, supra* (police did not use constitutionally impermissible force in preventing defendant from swallowing heroin bindles when they placed their hands around his throat and prevented his Adam's apple from moving up and down, but did not choke him, impair his breathing, or cause him to cry out in pain); *People v. Bass*, 214 Cal. App. 2d 742, 29 Cal. Rptr. 778 (1963) (officer's hand on defendant's neck to prevent him from swallowing evidence did not violate due process); *People v. Tahtinen*, 210 Cal. App. 2d 755, 26 Cal. Rptr. 864 (1962), *cert. denied* 375 U.S. 842, 84 S. Ct. 91, 11 L. Ed. 2d 69 (1963) (the force used by police officers reasonable where officer pressed defendant's head forward and downward to prevent him from swallowing; whether an amount of force is excessive is dependent upon the facts of each case; here, defendant bit, struck, kicked, and wrestled with officers in attempt to avoid being taken into custody with the heroin as evidence); *People v. Dickenson*, 210 Cal. App. 2d 127, 26 Cal. Rptr. 601 (1962) (holding defendant's Adam's apple to prevent him from swallowing did not violate due process where officer did not attempt to choke defendant). However, in *People v.*

*Parham*, 60 Cal. 2d 378, 384 P.2d 1001, 33 Cal. Rptr. 497 (1963), *reh'g denied* 379 U.S. 873, 85 S. Ct. 21, 13 L. Ed. 2d 80 (1964), the force applied by officers in striking the defendant twice on the back of the neck with a police club to extract a check which the defendant had placed in his mouth violated due process. "Choking a man to extract evidence from his mouth violates due process. [Citations omitted.] Clubbing a man to obtain evidence is equally brutal and offensive, and the check thus obtained should not have been admitted into evidence." 60 Cal. 2d at 384, 384 P.2d at 1004, 33 Cal. Rptr. at 500. The court noted that the defendant neither resisted arrest nor attempted to flee and that the officers' only objective was to extract the check from the defendant's mouth.

Washington appears to follow California's "no-choke" position. See, *State v. Williams*, 16 Wash. App. 868, 560 P.2d 1160 (1977); *State v. Young*, 15 Wash. App. 581, 550 P.2d 689 (1976), *cert. denied* 431 U.S. 931, 97 S. Ct. 2635, 53 L. Ed. 2d 246 (1977). Both *Williams* and *Young* involved the use of force to constrict the defendant's ability to swallow. In *Young*, one police officer pinched the suspect's nose while the other officer placed his hands on the suspect's throat. The court concluded that the suspect had not been choked and that the use of force was reasonable to prevent the destruction of evidence. In *Williams*, an officer pinched the defendant's nose while the other officer placed his hands around the defendant's throat, effectively preventing his Adam's apple from moving, and used a spoon to extract narcotics from the defendant's mouth. The *Williams* court distinguished *Young* because the defendant in *Williams* was actually choked for 30 to 60 seconds. The court held it was constitutionally reasonable for the police to place their hands on a suspect's neck to prevent swallowing of evidence, as long as they do not choke the suspect. The *Williams* court emphasized that the officers can place their hands on a suspect's neck to prevent the swallowing of evidence and apply even greater force when necessary to overcome active resistance. In *Williams*, the defendant did not resist beyond refusing briefly to spit out the drugs. The Washington Court of Appeals, in *State v. Taplin*, 36 Wash. App. 664, 676 P.2d 504 (1984), followed the same line of reasoning established in

*Williams.* One officer grabbed the suspect's nose by hooking his fingers into the nasal passage while the other detective placed his hands on the suspect's neck to stop movement of his Adam's apple and to prevent him from swallowing balloons containing narcotics. The court found the suspect was able to breathe, and therefore, the choke hold did not violate the test established in *Young* and *Williams.*

Several courts in other jurisdictions have upheld searches where force other than choking was applied to a defendant to extract evidence from his or her mouth. *State v. Strong*, 493 N.W.2d 834 (Iowa 1992) (approves warrantless pumping of stomach of defendant who ingested crack cocaine and observes that while physical evidence may not be tortured from defendant's lips, mouth is not a sacred orifice into which contraband may be placed and thereafter disposed of in a leisurely fashion); *State ex rel. Flournoy v. Wren*, 108 Ariz. 356, 498 P.2d 444 (1972) (action of officer in forcing open defendant's mouth and scraping marijuana off defendant's teeth with the cap of a ballpoint pen did not violate due process); *State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978) (police conduct did not shock the conscience where defendant, who had been observed placing balloons in his mouth, refused to spit them out and officer placed his hand on defendant's throat to prevent him from swallowing); *State v. Desmond*, 593 So. 2d 965 (La. App. 1992) (reasonable force was used to prevent suspect from swallowing cocaine where officers grabbed suspect's throat and slammed him to the ground, possibly rendering him unconscious); *State v. Bolton*, 548 So. 2d 345 (La. App. 1989) (forcible extraction of heroin from mouth of female suspect when officer took suspect by throat was constitutionally reasonable; the court noted that struggle to retrieve the contraband was short in duration and limited in extent, and no injuries resulted); *People v Holloway*, 416 Mich. 288, 330 N.W.2d 405 (1982), *cert. denied* 461 U.S. 917, 103 S. Ct. 1900, 77 L. Ed. 2d 288 (1983) (force applied to defendant's jaws and throat did not violate Fourth Amendment where search did not last long, defendant's blood supply and air passages were not restricted or cut off, and defendant did not require hospitalization and did not appear to be injured as a

result of the conduct); *Foxall v. State*, 157 Ind. App. 19, 298 N.E.2d 470 (1973) (police did not use unreasonable force in inserting shoehorn into defendant's mouth to extract evidence after a scuffle ensued between defendant and officers; subsequent physical examination of defendant revealed three broken ribs, bruised lower lip, slight hemorrhaging of one eye, and several teeth missing from denture plate). But see, *Locke v. State*, 588 So. 2d 1082 (Fla. App. 1991) (ordinarily not proper for police officer to forcibly choke a person in order to prevent the swallowing of small amount of drugs unless attempting to save suspect's life by preventing oral ingestion of drugs; remanded to trial court to make additional findings regarding the extent to which officer's conduct threatened suspect's safety, health, and sense of personal privacy and security); *State v. Tapp*, 353 So. 2d 265 (La. 1977) (evidence inadmissible where defendant was caused to disgorge the packet from his throat after a struggle lasting 15 to 20 minutes. To retrieve the evidence from defendant's throat, five police officers beat defendant in face and head with their hands, held defendant's nose to cut off his breathing, and choked defendant to prevent him from swallowing).

Given these conflicting views, it is appropriate to analyze the conduct of Perez and Sears under the framework established in *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

Perez' observations of white crumbs on Thompson's lips and mouth and Thompson's furtive movement toward his mouth in what appeared to be an attempt to hide something gave strong indications that evidence of a crime would be found in and around Thompson's mouth. The need for speed was also apparent. Thompson appeared to be in the process of destroying the only evidence the government had to convict him of possessing cocaine. The officers were unaware of how the drug was packaged; if unpackaged, the evidence could have been metabolized before a blood test could be administered. Moreover, the evidence present in and around Thompson's mouth was easily removed; thus, the method used to obtain the evidence was reasonable and performed in a reasonable manner. Indeed, the foregoing review of cases from other

jurisdictions illustrates that far more intrusive searches than that involved here have been held constitutional.

As noted in *State v. Williams*, 16 Wash. App. 868, 560 P.2d 1160 (1977), and *Carleton v. Superior Court (People)*, 170 Cal. App. 3d 1182, 216 Cal. Rptr. 890 (1985), the use of greater force is justified where the defendant did not surrender to the police, or aggressively combated them. Under the provisions of Neb. Rev. Stat. § 28-1412 (Reissue 1989), the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest. In *Wagner v. City of Omaha*, 236 Neb. 843, 848, 464 N.W.2d 175, 180 (1991), this court, in reviewing a 15-day suspension given to a police officer for the excessive use of force in performing his duties, held that "under the provisions of § 28-1412, a police officer in making an arrest must use only reasonable force, which is that amount of force which an ordinary, prudent, and intelligent person with the knowledge and in the situation of the arresting police officer would have deemed necessary under the circumstances." See, *Wilson v. Gutschenritter*, 185 Neb. 311, 175 N.W.2d 282 (1970); *Breese v. Newman*, 179 Neb. 878, 140 N.W.2d 805 (1966).

In reviewing the amount of force used, a court must make allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the force that is necessary in a particular situation. *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

The fact that Thompson's mouth was searched when he was unconscious does not, in and of itself, render the search unreasonable. In *Breithaupt v. Abram*, 352 U.S. 432, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957), the driver of an automobile involved in an accident was unconscious when police officers ordered blood to be withdrawn. The extraction was made by a physician in a simple, medically acceptable manner. The conviction was affirmed, the Court holding that the withdrawal did not offend that " 'sense of justice.' " 352 U.S. at 437. The "absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional

right." 352 U.S. at 435.

Although the determination must be made in light of the fundamental criteria laid down by the Fourth Amendment and in opinions of the court applying that amendment, the reasonableness of a search is a substantive determination to be made by the trial court from the facts and circumstances of the case. *State v. Sharp*, 184 Neb. 411, 168 N.W.2d 267 (1969); *State v. O'Kelly*, 175 Neb. 798, 124 N.W.2d 211 (1963), *cert. denied* 376 U.S. 956, 84 S. Ct. 978, 11 L. Ed. 2d 975 (1964).

So far as the record shows, Thompson suffered only a momentary discomfort from the restraint and did not find it necessary to consult a physician. In view of the lack of injury and the minimal intrusion of the officers in removing the suspect substances from Thompson's mouth, we cannot say the trial court's finding that the search was reasonable is clearly wrong.

## 2. SUFFICIENCY OF EVIDENCE

In his second and final assignment of error, Thompson asserts there was a failure of evidence because the corpus delicti was not proved.

### (a) Scope of Review

In the analysis of this assertion, it must be recalled that while in a bench trial of a criminal case the court's findings have the effect of a verdict and will not be set aside unless clearly erroneous, *State v. Reichert*, 242 Neb. 33, 492 N.W.2d 874 (1992), an appellate court has an obligation to reach an independent, correct conclusion regarding questions of law, *State Farm Mut. Auto. Ins. Co. v. Hildebrand*, 243 Neb. 743, 502 N.W.2d 469 (1993).

### (b) Nature of Evidence

Thompson argues that because the forensic chemist for the State was unable to ascribe either weight or size to the substances submitted to him for testing, the State failed to prove the corpus delicti of the crime. In so doing, he relies on two cases.

In the first, *State v. George*, 228 Neb. 774, 424 N.W.2d 350 (1988), the defendant was convicted of disturbing the peace

following an altercation in a bar. Several people were arrested. The only testimony offered against the defendant was that of the bartender, who said that her peace was disturbed. However, she conceded that the defendant interfered with her peace and quiet because he did not order a drink and was not a regular customer. She did not know who started the fight, but knew that the other three patrons of the bar who were also cited never threw a punch. In the trial held for the other patrons, the bartender stated that those three did not disturb her peace and quiet because they were regular customers who bought drinks. The court failed to find the corpus delicti proved beyond a reasonable doubt.

In the other, *State v. Rich*, 222 Neb. 394, 383 N.W.2d 801 (1986), the defendant was convicted of larceny. A store owner believed she saw the defendant place a box of pudding in his pants pocket and leave the store without paying. She testified that before the defendant left the store, she saw a bulge in his pants which appeared to have the shape of a box of pudding. The store owner called the police, who confronted the defendant and searched him but did not find the box. The evidence was held insufficient to find guilt beyond a reasonable doubt.

However, the statutes under which Thompson was convicted do not require a minimum amount of cocaine for conviction of a Class IV felony. "A person knowingly or intentionally possessing [cocaine] shall be guilty of a Class IV felony." § 28-416(3).

Indeed, we previously resolved this issue against Thompson. The cases *State v. Fletcher*, 221 Neb. 562, 378 N.W.2d 859 (1985); *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976); *State v. Brown*, 195 Neb. 321, 237 N.W.2d 861 (1976); and *State v. McElroy*, 189 Neb. 376, 202 N.W.2d 752 (1972), all stand for the proposition that unless a statute specifically provides otherwise, it matters not how much of a controlled substance one possesses; under such a circumstance, the quantity possessed is not an essential element of the crime.

Thus, as there is proof that the substances on Thompson's person were cocaine, it is immaterial that it may have been

"infinitesimal." Brief for appellant at 6. Thus, the corpus delicti was proved.

## IV. JUDGMENT

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, J., concurring.

The majority assumes that the police used the lateral vascular neck restraint (LVNR) to effect a search of Thompson. However, the record demonstrates the LVNR was used to arrest Thompson. Thus, the majority's discussion of the reasonableness of the LVNR as a method of securing a search of a person is not appropriate.

The evidence at the suppression hearing established the following events: Officer Perez left his police car, approached Thompson, and had Thompson place his hands on the police cruiser. Perez asked Thompson to open his mouth and Thompson refused. Perez then shined a flashlight on Thompson's face and observed "white crumbs" around his mouth. At that time, Perez states, Thompson was not free to leave. Perez again asked Thompson to open his mouth and Thompson refused. Wanting to secure Thompson, Perez told Thompson to place his hands behind his back. Thompson refused, pushed away from the police car, and began to swing his arms. Perez stated that Thompson struggled with him as he attempted to handcuff Thompson. During this struggle, Perez placed Thompson in the LVNR. According to Perez, he used the LVNR to control and handcuff Thompson. After Thompson was handcuffed, Officer Sears wiped a white substance from Thompson's lips and around his teeth.

The legality of Thompson's arrest is not argued in this court. The analysis for determining the constitutionality of an arrest is separate and distinct from that used to determine the constitutionality of a search. Whether a police officer has probable cause to make an arrest and whether the officer has exceeded the scope of justified force while making the arrest requires a thorough review of the existing circumstances. See, *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987) (stating that a warrantless arrest must be based upon probable cause and that the amount of force used to effectuate the arrest must

be justified under the circumstances); Neb. Rev. Stat. § 28-1412 (Reissue 1989).

SHANAHAN and LANPHIER, JJ., join in this concurrence.